## PEAKE v. YOUNG.

1. FINDINGS OF FACT by the Circuit Judge from testimony heard by him, approved.

2. PURCHASE—ACTION.—An action by a master of the court to enforce a contract of purchase made with his predecessor in office by the defendant, is maintainable in the Court of Equity as in the nature of an action for specific performance.

3. MASTER—SUCCESSOR.—One appointed to the office is the successor in office of the master of a prior term.

4. IBID.—POWERS.—Where the Court of Equity directs the master of that court to sell a lot of land and take bond and mortgage from the purchaser, the master who was so ordered to sell was also invested with power to execute a proper deed of conveyance.

5. PURCHASER—SALE.—Where the defendant admits that he bid off a lot of land at a master's sale, and that his bid was entered in the sales book, he cannot contend that there had been no sale.

6. MASTER—SUCCESSOR—DEED.—*It would seem* that a deed executed while in office by the master that made the sale would be valid when delivered to the purchaser by a succeeding master.

7. IBID.—IBID.—ACTIONS.—Where a master made a sale of land under order of court, and the purchaser paid the cash portion of his bid and went into possession, but failed to execute the bond and mortgage required by the order of sale, although not refusing to do so until another master had succeeded to the office, while neither master could make deed, the first because his term had expired, and the second because he had not made the sale, the latter properly brought action to require the purchaser to comply, without first seeking any further order of the court.

8. SALE—NON-COMPLIANCE—ACTION.—An action like this may be regarded as an action in the nature of an action of foreclosure.

9. COSTS IN CHANCERY are within the discretion of the Circuit Judge. In this case they were properly decreed against defendant.

10. DECREE—RESALE.—The decree in this case properly directed a sale of the land upon defendant's failure to execute the bond and mortgage, or to pay the unpaid balance of his bid.

11. LIMITATION OF ACTIONS.—The plea of the statute of limitations by defendant was properly overruled.

Before IZLAR, J., Union, October, 1892.

This was an action by C. H. Peake, as master for Union County, against John L. Young, commenced in February, 1892. The Circuit decree was as follows:

The history of this case, as developed by the pleadings and testimony, is as follows:

James Munro, late master of Union County, on the salesday in January, 1883, sold, under a judgment duly obtained in this court, in a cause entitled Thomas B. Jeter, as administrator of Andrew Wallace Thomson, deceased, plaintiff, against Aurelius Wallace Thomson, defendant, the lot of land described in the complaint herein. At said sale the said lot was bid off by, and set down to, John L. Young by the said master, and said defendant became the purchaser at the price of two hundred and twenty-five dollars. That the terms of the said sale were one-fourth cash, and the balance on a credit of one and two years, the credit portion to be secured by a bond of the purchaser, bearing interest from the day of the sale, and a mortgage of the premises. The defendant paid to James Munro, master, the sum of fifty-six dollars and twenty-five cents, being the cash portion of the purchase money, and entered into the possession of the premises under his purchase, and has been ever since, and is now, in the possession and use of the same; but he has failed and neglected to comply with the terms of the sale, by executing his bond and mortgage for the credit portion of the purchase money, as required by the terms of sale, and the decree of the court under which said lot was sold. James Munro, late master, prepared the deed, bond and mortgage, and was ready and willing to deliver the conveyance upon the execution of the bond and mortgage by defendant; but in consequence of the failure of the defendant to execute the bond and mortgage, the conveyance was not delivered. The defendant sent a check to James Munro, master, for the two instalments, not including the interest due thereon; this sum said master declined to accept in full satisfaction of the debt. James Munro went out of office in January, 1891.

After the plaintiff, his successor, had qualified as master, he signed the deed of conveyance which had been previously prepared by him, and this deed, together with a deed signed by his successor in office, were duly tendered to the defendant, who refused to accept the same, and to execute his bond and mortgage, as required by the terms of sale. That the said

James Munro was ready and willing at all times during his
term of office to execute the deed of conveyance, as required
by the decretal order under which the land was sold, and to
deliver the same upon the defendant's executing his bond and
mortgage for the credit portion of the purchase money, as fixed
by said decree, or upon his paying the credit portion of the
purchase money and interest; and the plaintiff has also been
ready and willing to do the same. The defendant raised no
objection to the title of said property, but claimed that the es-
tate of Andrew W. Thomson, deceased, was indebted to him.
James Munro, knowing that the defendant was perfectly good
for his contracts, and believing that he would comply with the
terms of sale, took no steps to enforce it. The defendant made
no absolute refusal to comply until just before action was com-
menced. On the 24th day of February, 1892, James Munro,
as late master of Union County, executed the following paper
to C. H. Peake, as master of said county: "I, James Munro,
late master of Union County, do hereby assign and transfer
unto C. H. Peake, as master of said county, a certain agree-
ment entered into on the first day of January, 1893, by John
L. Young, with me as master, for the purchase by said John
L. Young of a lot of land, containing four acres, more or less,
in the town of Union, State of South Carolina, bounded," etc.

Action was commenced by the plaintiff on the 25th day of
February, 1892. The case was heard by me at the October
term of 1892 of the Court of Common Pleas for said county,
the testimony being taken in open court. The defendant of-
fered no testimony.

The material allegations of the complaint are fully sustained
by the evidence. The defendant, however, pleads the statute
of limitations to the cause of action alleged in the plaintiff's
complaint, and demurs orally on the ground that the complaint
does not state facts sufficient to constitute a cause of action in
favor of the plaintiff. These pleas raise serious questions, and
demand more than casual consideration. The action is for
specific performance. The specific performance of contracts is
a branch of the equitable jurisdiction of the Court of Equity.
This jurisdiction arises out of the inability of the courts of com-

mon law to enforce the actual performance of the contract. Fry Spec. Perf., 1, 2. That the Court of Equity would enforce specific performance of a contract like the present, I have no doubt. The rule in equity is different from that in law, in regard to the time in which a contract is to be performed. Fry Spec. Perf., 312.

It is clear to my mind, that the defendant in the present action, notwithstanding the lapse of time since his purchase and entry into the possession, could have maintained his action against James Munro, master, for specific performance of the contract to convey, at any time before he went out of office, in case he had offered to perform his part of the agreement, and said master had refused to execute the conveyance. In the case of *Waters* v. *Travis,* 9 Johns., 450, where, by a contract for the sale of land, the vendor was to convey at a time specified, and the vendee was "at the same time" to secure the purchase money, and the vendee took possession under the contract, but no conveyance was executed, and the purchase money was not paid for fifteen years, it was held that the lapse of time was no objection to a decree for specific performance at the suit of the vendee. Fry Spec. Perf., 322, note 13. If such lapse of time would not bar the vendee, one party to the contract, why should it bar the vendor, the other party? And that the vendor here is the court, acting through its agent, the master, can certainly make no difference. In *Longworth* v. *Taylor,* 1 McLean, 395, it was held that the parties might be considered as mortgagor and mortgagee, as the defendant's default has prevented them from occupying that position in law; that the plaintiff's equity was not extinguished by lapse of time; and that he had not been guilty of such negligence as to cut off his right to a decree for performance. So I hold in the present case. The plea of the statute of limitations, therefore, cannot prevail under the circumstances of this case.

But the difficulties in the case do not end here. The plaintiff is the successor in office to James Munro, late master, who made the sale, and who, as the agent of the court, was directed to execute the conveyance to the purchaser, the defendant. Has the plaintiff, then, such right and interest in the agreement

entered into between his predecessor in office and the defendant, respecting the sale of said lot or parcel of land, as entitles him to maintain an action upon it for specific performance? Now, if the contract for the sale of said lot had been completed, and the bond and mortgage had been executed by the defendant to James Munro, master, and not having been paid, had been turned over to his successor, the plaintiff, it is clear that he could have maintained an action of foreclosure to enforce the payment of the same. But here the contract was not completed by James Munro, plaintiff's predecessor.

When the late master went out of office, he had, it is true, prepared the deed and other papers, but he had not signed the deed. He signed the deed after his authority to exercise the duties of the office of master had ceased. When his office ceased, his duties in connection with the office ceased. After this he could perform no official act. His authority for making the sale and executing a deed of conveyance to the purchaser, was contained in the decree under and by virtue of which he acted. Outside of said decree he had no authority in connection with the sale and conveyance of said lot, and could exert none. When he went out of office the sale was not completed, the deed had not been delivered. The making of the deed was a part of the act of selling. He was appointed by the court to make the sale; therefore, he was the only person who could make the deed without the further order of the court. Rorer Jud. Sales, sec. 427. Where a sale is made by order of the Court of Equity by the master, the court takes the matter into its own hands, and makes the sale for the parties. It directs, controls, and manages the whole proceeding until the sale is in all things carried into effect. *McKee* v. *Lineberger*, 69 N. C., 240, cited by Rorer Jud. Sales, sec. 7, note 2.

Had he signed the deed in the manner required by law while in the exercise of the duties of his office, and in that shape the papers had been turned over to the plaintiff, as his successor in office, to be delivered by him to the defendant upon his completing the contract of purchase on his part, I think the plaintiff would have been warranted in completing the contract with the defendant, by delivering to him the conveyance upon

his executing and delivering to him, as master, the bond and mortgage required by the terms of sale. For, under these circumstances, the plaintiff would have been in position to have fulfilled the agreement on the part of the vendor—the court— by delivering the deed authorized by the decree. The transaction would, when executed, have related back, and have taken effect as of the time when it should have been completed. And such act of the master, upon being reported to the court, would, without doubt, have been confirmed by the court; as the court has complete control over the officers making a judicial sale, and the approval or disapproval of such sale rests in its sound discretion.

But such was not the case. The deed was not signed by James Munro, late master, until after his successor, the plaintiff, had qualified and taken possession of the office. But, even under these circumstances, I think, the plaintiff had such a right and interest in the contract as would enable him to maintain an *action* for specific performance. While it is true that the master's office is created by statute, and he can only exercise the powers conferred by statute, and that there is no statute which authorizes and empowers the successor to the master who made the sale to execute a conveyance to the purchaser on his complying with the terms of the sale, and that the authority of the master who made the sale is derived from the decree under which the sale is made, yet it appears to me that the successor to the master who made the sale is, at least, invested with sufficient right and interest in the completed contract of sale as to enable him to compel the purchaser to comply with his contract.

The act establishing the office of master, approved March 22, 1878 (16 St., 608), provides that masters shall possess the powers, perform the duties, and be subject to the liabilities, prescribed in and by the act of the General Assembly, passed in 1840, entitled "An act to ascertain and define the powers, duties, and liabilities of masters, commissioners, registers in equity," etc. Section 26 of the act of 1840 (11 St., 108), prescribes, among the duties required of masters, that, upon the expiration of the term of any master, he shall (within twenty

days after his successor has received his commission) pay over, transfer, and deliver to his successor, all moneys, bonds, notes, certificates of stock, and other choses in action, or property, held by virtue of his office. The right to take proceedings in equity is an equitable chose in action. James Munro, late master, at the expiration of his term, had a right to bring an action in equity against the defendant, to compel him to complete his contract of sale regarding the lot of land described in the complaint. This right of action, under the statute, passed to, and was transferred to, his successor.

I have no doubt whatever, that had the present plaintiff reported to the court the status of the case under which the sale was made, that the court would have had, under the circumstances of this case, authority to have ordered the present master, upon the defendant complying with the terms of sale, to execute to him a deed of conveyance to the premises; and that upon this being done and reported to the court, and the sale confirmed, it would have vested in the defendant the title to the lot, and determined all questions as to its regularity, and left nothing further to be considered and done in regard to it. Now, does the mere fact that this course was not pursued, prevent the court from granting any relief in the present action? I hardly think so. It may have been better to have proceeded in the case in which the sale was made, and to have invoked a different process of the court to compel the defendant to comply with his contract. But be this as it may, I hardly think that, under the broad and liberal rules of the Court of Equity, the plaintiff will be turned out of court, with the injunction, you have mistaken your remedy, you have no interest in this matter, which entitles you, under these proceedings, to the relief which you demand.

I know it is a well settled principle, that the Court of Equity will not compel specific performance, unless it can, at the time, execute the whole contract on both sides, or at least such part of it as the court can ever be called on to perform. But in the view I take of this case, no such difficulty is presented. The purchaser at a judicial sale becomes a party to the proceedings in which the sale is made. "Now, whoever makes him-

self a party to the proceedings of a court of general jurisdiction, and undertakes to do a particular thing under its decretal orders, may be compelled to perform what he has undertaken. The proper tribunal to compel it is the same court, and by motion in the same cause in which the undertaking occurred." Rorer Jud. Sales, § 148. The purchaser at a judicial sale may be compelled to complete his purchase by rule to show cause why the property should not be resold at his risk, made in the case in which the property was sold. And in such case, when a resale is ordered, the former sale is not set aside, but the property is sold as the property of the former purchaser. If it brings more than the debt, he is entitled to the surplus; if it brings less, he is responsible for the deficiency. But as I take it, rule to show cause in the action under which the land was sold, is only one of the modes by which the purchaser may be compelled to complete his purchase.

It appears to me, therefore, that while the party seeking to compel the purchaser to complete his contract of purchase, may proceed in a summary way by rule to show cause in the case in which the sale was made (and this, it would seem, is the usual and proper proceeding), there is, at the same time, nothing to prevent the party from adopting the formal action of specific performance to compel the purchaser to specifically perform his contract. Although the defendant is in the possession of the lot of land, and has an equitable estate therein, nevertheless the vendor still retains the legal title, "and the vendee cannot prejudice that legal title, or do anything by which it shall be divested, except by performing the very obligation on his part which the retention of such title was intended to secure, namely, by paying the price according to his contract." 3 Pom. Eq. Jur., sec. 1260. And the action here may be regarded simply as an action to compel the defendant to make payment of the purchase price of the lot within a specified time, according to the terms of his contract, or else foreclose the contract.

I conclude, therefore, that, under the circumstances of this case, the delay in completing the contract of sale is attributable to the defendant, and it would be inequitable to allow him

to avail himself of lapse of time as a defence; that there has been no *laches* on the part of the plaintiff subsequent to the absolute refusal of the plaintiff to complete his contract; that the plaintiff has such an equitable right and interest in the contract of sale as will entitle him to maintain this action; that the complaint states facts sufficient to constitute a cause of action; and that the plaintiff is entitled to the relief which he demands.

It is, therefore, ordered, adjudged, and decreed, that the defendant specifically perform his agreement respecting the purchase of the lot of land described in the complaint, by executing his bond to the plaintiff as master of this court. * * * That the cost of this action be paid by the defendant. It is further ordered and adjudged, that in case the defendant shall fail to execute and deliver the said bond and mortgage, or to pay the credit portion of the purchase money of said lot, with the interest due thereon, according to the terms of sale, on or before the first day of February, 1893, that the said lot or parcel of land be sold on the salesday in March next, &c. * * *

That in case of sale, the said clerk shall, out of the proceeds, pay first the costs and expenses of sale, and the cost of this action, then the amount due to the plaintiff for principal and interest on his debt, and if there be a surplus, that he pay said surplus to the defendant; but in case the proceeds of sale be insufficient to pay the debt and interest of the plaintiff in full, that the defendant pay such deficiency to the plaintiff.

*Mr. D. A. Townsend,* for appellant.

*Mr. William Munro,* contra.

November 13, 1893. The opinion of the court was delivered by

MR. JUSTICE POPE. This action was brought to a hearing before his honor, Judge Izlar, in the Court of Common Pleas for Union County at the October term, 1892, and the decree of the court having been rendered on the 3d of January, 1893, in favor of the plaintiff, the defendant has appealed therefrom on twenty-eight grounds, to wit:

That the Circuit Judge erred in finding: 1. That James

Munro, Esq., was ready and willing, at all times during his term of office, to execute the deed of conveyance, as required by the decretal order under which the land was sold, and to deliver the same upon the defendant executing his bond and mortgage for the credit portion of the purchase money of said land. 2. That said deed was not delivered because of defendant's failure to execute such bond and mortgage. 3. That the defendant made no absolute refusal to comply till just before action was commenced, and in not finding and decreeing the contrary. 4. That the material allegations of the complaint are fully sustained by the evidence. 5. That the action is one for specific performance. 6. That the Court of Equity would enforce the specific performance of a contract like the present one. 7. That the rule in equity is different from that in law in regard to the time in which a contract is to be performed. 8. That the plea of the statute of limitations could not prevail under the circumstances of this case. 9. That the plaintiff is the successor in office of James Munro, as late master for said county. 10. That James Munro, as late master, was directed by the court to make a deed of conveyance of said land to the purchaser thereof. 11. That there was a sale of said land to the defendant. 12. That if James Munro, Esq., as master as aforesaid, had signed the deed, as required by law, while in the exercise of the duties of his office, to be delivered by him to the defendant Young upon his complying with the contract of purchase on his part, the plaintiff would have been warranted in completing the contract by delivering to defendant the said conveyance upon defendant executing the bond and mortgage required by terms of sale, and that the plaintiff would have been, under these circumstances, in a position to have fulfilled the agreement on the part of the vendor, and that the transaction would have related back and have taken effect as of the time when it should have been completed, and that such act would have been confirmed by the court. 13. That under the circumstances of this case, the plaintiff has such right and interest in the contract as would entitle him to maintain an action for specific performance. 14. That the successor in office of the master who made the sale is invested with sufficient right and

interest in the uncompleted sale to enable him to compel the purchaser to comply with his contract. 15. That the act of the legislature, approved March 22, 1878, 16 Statutes at Large, page 608, and cited by his honor as if in 18 Statutes at Large, page 608, applies to the present case. 16. That the duties of James Munro, as late master as aforesaid, were governed by the said act of the legislature of 1841. 17. That this transaction was governed by the said act of the legislature of 1841. 18. That the right to take proceedings in equity is such chose in action as is mentioned in the act of 1841. 19. That Munro, late master, at the expiration of his term of office, had a right to bring an action in equity against the defendant, to compel him to complete his contract, and that this right passed to, and was transferred to, the plaintiff. 20. That notwithstanding the irregularity in this case, the court can grant relief therein. 21. That this action may be regarded as an action to foreclose a contract, and that the plaintiff had a right to enforce it. 22. That there was no *laches* on the part of the plaintiff or of James Munro as late master. 23. That the delay in completing the contract was attributable to the defendant, even after the absolute refusal of the defendant to comply. 24. That the complaint states facts sufficient to constitute a cause of action. 25. That the plaintiff is entitled to the relief demanded in the complaint. 26. That his honor further erred in adjudging and decreeing, that the defendant specifically perform said alleged agreement, respecting the said purchase, by executing and delivering his bond to the plaintiff, as master of this court, conditioned for the payment of $168.75, payable in two equal annual instalments, with interest from the first day of January, 1883, payable annually; that is to say, $84.37 on the first day of January, 1884, and all interest then due, and the remaining sum of $84.37, and all interest then due, on the first day of January, 1885, together with mortgage of said lot. 27. That the defendant pay the costs of this action. 28. That in case the defendant failed to execute and deliver said bond and mortgage, or failed to pay the credit portion of the said purchase money, that said lot be sold by the master.

Before undertaking to consider in their order the numerous

grounds of appeal here presented for our consideration, it may not be amiss to recall some of the facts upon which this action is predicated, although they are very fully and accurately set forth in the decree of the Circuit Judge, which decree in full will accompany this case.    James Munro, as master for Union County, under a decree of the Court of Common Pleas, on its equity side, exposed for sale at public auction, on the first Monday of January, 1883, a lot of land, containing four acres, situated in the town of Union, and constituting a part of the real estate owned by Dr. A. Wallace Thomson at the time of his death, for one-fourth of the purchase money to be paid in cash, and the balance on a credit of one and two years, in equal instalments, with interest on the credit portion from the 1 January, 1883, and at such sale the defendant, John L. Young, became the purchaser at the price of $225.    Col. Young paid the one-fourth of his bid in cash to the master, but although requested by said master to complete his purchase, neglected so to do.    He, however, offered to pay this credit portion to the master, but refused to pay any interest.    His offer was declined by the master.    Thus the matter stood (Young being in possession of the land) until 1891 (January), when the present plaintiff, Christopher H. Peake, was duly appointed master for Union.

Although the law contemplated a surrender by Munro to Peake within less than thirty days after Peake duly qualified as such master, of all the assets of the office of the master, yet, no doubt by an arrangement between these gentlemen, the outgoing and incoming master, Mr. Munro did not formally assign the contract of Young for his said purchase until early in the year 1892.    Efforts were then made by both these gentlemen to induce Col. Young to close up this matter by giving his bond and mortgage; they tendered to him deeds for the lot of land in question.    At last, Col. Young flatly refused to comply with his bid, still holding possession of the lot of land in question.    Peake, as master, then brought this action against Young, as defendant, reciting all the foregoing facts, and demanding a judgment of the court against the defendant, by which the defendant should be required to perform said agree-

ment, and pay to the plaintiff the balance of the purchase money, with interest thereon and costs; and upon his failure to do so, that the premises be sold and the proceeds of sale applied to the payment of the same and the costs, and that the defendant be required to pay any deficiency. In his answer, the defendant admits that he bid off said land at the sale thereof made by Munro, as master, and that he paid the one-fourth of the purchase money, but denies all the other allegations. The defendant further pleads that the cause of action did not arise within the six years immediately preceding the commencement of plaintiff's action. He also presented an oral demurrer, that the complaint did not state facts sufficient to constitute a cause of action.

Judge Izlar heard the testimony in open court. The plaintiff alone introduced testimony, the defendant offered none. The testimony offered corroborated all these facts pleaded in the complaint. By his decree, Judge Izlar adjudged that the defendant should perform his contract of purchase, in accordance with the terms of the original decree for sale; that the plaintiff, as master, should execute and deliver to the defendant a deed of conveyance of the premises, but that said deed should be delivered simultaneously with the execution of bond and mortgage by defendant, and for costs to be paid by defendant. However, in case the defendant failed to complete his observance of his duty in the premises by either executing the bond and mortgage or by paying in cash on or before 1 February, 1893, that the lot of land should be sold by the master on salesday in March, 1893, or on some convenient salesday thereafter, and apply the proceeds of sale to the payment of the costs of the action and to the satisfaction of the amount due by Col. Young on his contract of purchase, and in case of deficiency, the defendant shall pay the same.

The 1st, 2d, 3d, and 4th grounds of appeal relate to the findings of fact by the Circuit Judge. The rule announced by this court so often, sanctions such findings by the Circuit Judge unless without any testimony to support them, or when such findings are manifestly against the weight of the testimony. A careful study of the testimony as set out in

the case convinces us that the Circuit Judge has made no mistake here, and, therefore, these four grounds of appeal are dismissed.

By reading the allegations of the complaint it is manifest that the action is one for the specific performance of a contract, and, therefore, the fifth ground of appeal is dismissed; but even if this action should be held not to come within the strict rules in equity governing instances when that court would decree a specific performance of the contract, still the plaintiff would not be without a remedy in a court of equity, as we shall hereafter undertake to maintain, and hence the sixth ground of appeal is not meritorious.

Now, as to the ninth ground of appeal, it must be dismissed; for when the legislature of this State created the office of master for Union County, and devolved upon the officer (master) duties similar to those exercised in most respects by commissioners in equity under our former statutes, and James Munro was duly appointed such master for Union County, whose term of office having expired on 1st January, 1891, at which time the plaintiff was commissioned and qualified as master, of course such plaintiff became the successor in office of the said James Munro. Where the Court of Equity for Union County ordered the master, who was at that time James Munro, to sell the land in dispute, although no words of explicit direction were then used for James Munro, as said master, to execute a conveyance of the land to the purchaser thereof, the law implies the grant of such power by the court. The direction to sell and take the bond and mortgage from the purchaser imparts the duty of conveying to such purchaser. *Young* v. *Teague*, Bail. Eq., 22; also, section 790 of the General Statutes of this State. The tenth ground of appeal must, therefore, be dismissed.

The proof in this case was overwhelming and without any contradiction—indeed, the answer of defendant admitted—that at the sale of this land the defendant was not only entered upon the book of sales kept by the master as the purchaser, but the defendant actually paid a part of the purchase money. The eleventh ground of appeal must, therefore, be dismissed.

The twelfth ground of appeal relates to the enunciation by the Circuit Court of a sound piece of law, not applying, however, to the state of facts proved in this case; for James Munro did not execute any deed of conveyance to the defendant during his term of office. *If* he had done so, &c., there would exist no necessity for the execution of a new deed by the present master. This ground of appeal is dismissed. Besides all this, when the decree appealed from is read as a whole, objections here raised are shown to be groundless.

We scarcely deem it necessary to name and consider separately, and in their order, the 13th, 14th, 15th, 16th, 17th, 18th, 19th, 20th, 22d, 23d, 24th, 25th, 26th, and 28th grounds of appeal, though we shall not overlook any of them. Let us examine carefully some of the elements that go to make up so much of the present controversy that we now purpose considering, and which are connected with these grounds of appeal. The condition of the estate of the late Dr. Wallace Thomson rendered it necessary that the personal assets of his estate in the hands of his administrators for the payment of such intestate's debts should be re-enforced or aided by the sale of the lands owned by such intestate at his death. The law having transferred the title to such lands to the only heir at law of the intestate, Aurelius Wallace Thomson, a complaint was filed on the equity side of the Court of Common Pleas for Union County by such administrator against such heir at law, setting forth this necessity for the sale of such lands, and in accordance with the prayer of the complaint, sale by the master of such lands was ordered. We need not repeat that the terms of such decretal order required the master to sell for one-fourth in cash and the balance on a credit. Now, when John L. Young purchased the four acres in dispute, and his name was duly entered upon the book of sales by the master, he became amenable to the control of that court in that cause; he became, so to speak, a party to that cause. Rorer on Judicial Sales, § 148; *Tompkins* v. *Tompkins*, 39 S. C., 537. Such purchaser could have been proceeded against by rule to show cause why he had not complied with his bid. *Haig* v. *The Commissioners of Confiscated Estates*, 1 DeSaus., 112. If James Munro, while master,

had prayed for such process—rule to show cause—it would have been the easiest and speediest course, but this was not done.

Munro ceased to be master on 1 January, 1891, and the present plaintiff became entitled as his successor to the moneys on hand, books, papers, etc., of the office. Section 457 of the General Statutes of this State. Now the book of sales was transferred and also the money paid by the defendant on his contract of purchase. So that the present plaintiff was, in the eye of the law, clothed with all the rights of his predecessor in office as against Young. The plaintiff, under a misconception of his powers, offered to convey to Young, but without an order therefor he was powerless in this respect, for he had not made the sale. Thus we have before us : A valid power in the master, Munro, to sell to Young ; an actual contract by Young to purchase ; the payment by Young of a part of the purchase money on his contract to purchase ; the fact that Young had been let into possession of the land ; no power in Munro to convey after he ceased to be master ; no power in Peake, his successor, to convey ; and no refusal on the part of Young to complete his purchase, until after Peake had qualified and entered upon the duties of his office as master, as the successor in office of Munro. What power over this land did Young have? He was in possession, and had paid part of the purchase money. What power in his office as master did Peake have to force Young to comply ?

Where one, under a contract to purchase, is let into possession of land, and from any cause the owner of the fee declines to go further in the proposed sale, such possession of the would-be purchaser is, in the eye of the law after such declination of the owner, merely permissive of the true owner, and the relation of tenant at will is created by the law as to such would-be purchaser's possession ; but where one is let into possession under a contract to sell, evidence of which contract to purchase is reduced to writing, and such purchaser has paid part of the purchase money, a different rule prevails. In the latter case, the one who sells and who holds the title is declared to hold the title in trust for the purchaser, and the purchaser has an equitable claim for title, and in addition the vendor

holds the legal title to protect his money due.    As the doctrine is stated by Mr. Pomeroy in his work on Equity Jurisprudence, in section 1260, where, speaking of a vendor before delivery of title though possession has been surrendered to the vendee, he says: "In the latter, although possession may have been delivered to the vendee, and although, under the doctrine of conversion, the vendee may have acquired an equitable estate, yet the vendor retains the legal title, and the vendee cannot prejudice that legal title, or do anything by which it shall be divested, except by performing the very obligation on his part which the retention of the legal title was intended to secure, namely, by paying the price according to the terms of the contract."

So in the case at bar, while Young, under his contract to purchase, evidenced by the entry on the sales book of the master, Munro, payment of part of the purchase money under such contract, and being let into possession of the land sold, has the right to treat the legal title as being held as his equitable estate, yet he has no legal title to the land and cannot have, until the payment of the purchase money under his contract for such purchase.    But the vendor has the right to enforce the payment of such purchase money, and cannot be called upon to convey the legal title until such payment is made.    Now here, who has created a breach of duty?    Is it not clearly Young, the purchaser?    Did the master, acting for the court, ever refuse to make title, if Young would comply with his contract for this purchase?    The Court of Common Pleas, sitting as a Court of Equity, has complete control of this sale.    And inasmuch as justice to all parties concerned, required that an allegation of the facts should be made to the court, in order that the rights and interests of all concerned should be subserved, and as the pleadings in an action and testimony thereunder are the methods recognized in law whereby these results may follow, we can see no good reason for withholding our approval of the plaintiff's course to the defendant, by instituting this action.    Defendant seems to question plaintiff's course without an order therefor.    Parties in interest, such as creditors, might raise such a question, as the master, to a certain extent, is trustee for them.    He is to receive, under the

law, payment from the purchaser, and we cannot view with disapproval his honest efforts, in a legal manner, to enforce a payment so long delayed by this defendant.

We do not feel called upon, nor do we deem it pertinent to a proper decision of the legitimate issues growing out of this action, for us to decide whether the act of 1840 governs the master or his predecessor in office. We fail to find such irregularity, on the plaintiff's part, in this action as to shut him off from the relief he seeks; for it seems to us he had waited but a reasonably short time on the defendant, Young, before he tried conclusions with him in court. The patient forbearance of Munro seems to have been wasted upon the defendant here. Indeed, the previous master, Munro, was entirely too patient. His duty would have been better answered by a prompt report to the court of this negligence of Young. This waiting policy has nothing to commend it, where the rights of others may be jeopardized. Let all these exceptions we have enumerated under this branch of the discussion be overruled.

We, also, agree with the Circuit Judge in the matter embraced in the 21st exception. We see no reason why this action may not be regarded in the nature of a foreclosure. This exception is overruled.

As to the 27th exception, it may be remarked that in Chancery cases, it is usually in the discretion of the Circuit Judge to affix the liability for costs when he makes up his decree. If we chose to express an opinion, we would venture the remark that the defendant richly deserves this penalty for his long continued and persistent neglect of duty.

Before leaving the case, we should state that when the Circuit Judge in his decree provided that if the defendant failed to deliver his bond and mortgage, or failed to pay the credit portion of said purchase money, that said lot should be sold by the master, he evinced a nice regard to the rights of others as affected by the defendant. When the defendant admitted in his answer that he did bid off that parcel of land, sold under an order of court, and had paid part of the purchase money, and these facts were supplemented by the facts proved at the trial, the Circuit Judge was justified in this order.

The statute of limitations, interposed by the defendant, might have been of some benefit to him if plaintiff had been unwise enough to sue him for the money due on the law side of the court, but here, in analogy to the action of the court when a mortgage is being foreclosed (*Gibbes* v. *Railroad Company*, 13 S. C., 253; *McCaughrin* v. *Williams*, 15 *Id.*, 505; *Nichols* v. *Briggs*, 21 *Id.*, 484), the lapse of six years is of no avail. And it is well recognized as a principle of equity, that the same rule that obtains in a court of law does not find admission in a Court of Equity, when such issues are raised as are here presented. The authorities cited in the Circuit decree seem to be conclusive on this point. See, also, the case of *Blackwell* v. *Ryan*, 21 S. C., 123. All the exceptions of defendant are overruled.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.