### PEORIA GRAPE SUGAR CO. v. BABCOCK CO.

#### (Circuit Court, D. Indiana. May 25, 1895.)

#### No. 401.

STATUTE OF FRAUDS—SUFFICIENCY OF MEMORANDUM—INDIANA STATUTE.

A memorandum in the form: "2/17. 15 cars mx. glucose, $1.17½. Our guarantee price. Shipment: Feby., March. L. J. R. Peoria Grape Sugar Co.,"—is insufficient to sustain an action under the Indiana statute of frauds, providing that no contract of sale of goods, over $50 in value, shall be valid unless some note or memorandum in writing is made and signed by the party to be charged, such memorandum failing to disclose the name of one party to the contract, and being indefinite as to the quantity of glucose, and the price.

This was an action by the Peoria Grape Sugar Company against the Babcock Company to recover the price of certain glucose, sold and delivered. The defendant interposed a counterclaim, to which the plaintiff demurred.

This is an action by the plaintiff against the defendant to recover the purchase price of a quantity of glucose sold and delivered by the plaintiff to the defendant. The defendant has filed a counterclaim in nine paragraphs against the plaintiff, seeking to recover damages for the alleged breach of several contracts for the sale and delivery of large quantities of glucose alleged to have been sold by the plaintiff to the defendant. The first paragraph alleges, in substance, that the plaintiff, by its written contract marked "Exhibit A," agreed to sell and deliver to the defendant 15 cars of glucose at the price of $1.17½ per 100 pounds, which was to be shipped to and delivered at Evansville during February and March, 1894. That the glucose was to be of the kind and quality described in the contract. That 15 cars would be 750 barrels, amounting in weight to about 450,000 pounds. That during the month of April, 1894, the plaintiff by its verbal agreement, also by its written agreement, a copy of which is filed, marked Exhibits "D" and "E," promised and agreed to extend the time for shipment of the remainder of said glucose on said contract. That thereupon the defendant directed the plaintiff to ship all of the remainder of the glucose, which the plaintiff thereupon promised in writing to do, a copy of which, marked "Exhibit E," is filed. That, in compli-

ance with this promise, the plaintiff did ship a portion of the glucose, to wit, 250 barrels. That subsequently, on August 11, 1894, the plaintiff refused to further comply with its contract, and refused to ship any more glucose, leaving due on said contract 500 barrels, amounting in weight to about 300,000 pounds. That, by reason of the failure to deliver the glucose, the defendant was compelled to go into the market and buy enough to cover its contract, and lost the difference in price between the contract price and the value at the time of the refusal, to wit, $2,850. That the defendant was ready and willing to receive and pay for said glucose as fast as the same was shipped. That in said contract "mx." means mixing; "$1.17½" means $1.17½ per 100 pounds; "Shipment: Feby., March" means shipments to be made during February and March; "2/17" means second month, seventeenth day; "our guarantee price" means that plaintiff guaranties the price to defendant not to exceed the price stated in the contract, and that plaintiff will pay defendant any excess of price it may be compelled to pay in the market in case it is compelled to go into the market to buy by reason of plaintiff's failure to comply with its contract. That said terms and expressions are familiar to the trade, and their meaning well understood.

The exhibits referred to are as follows:

### Exhibit A.

"2/17. 15 cars mx. glucose........................................ $1.17½.
"Our guarantee price. Shipment: Feby., March.
"L. J. R.  Peoria Grape Sugar Co."

### Exhibit D.

"Peoria, Ill., Apr. 19th, 1894.

"The Babcock Company, Evansville, Ind.—Gentlemen: Your letter regarding past-due shipments received, and contents noted. We will admit we should have notified you at the expiration of the contract that we should have a right to ship the goods. When your Mr. Babcock was here, the writer was not aware that the option was out, supposing you still had time to take them. The price of corn was advanced so sharply that it will be a dead loss for us to fill the order. At the same time, if you want the goods shipped, we will do so, but must have shipping directions so as to ship them at our convenience. Please instruct us how you want the goods, and oblige.

"Yours, truly,                                                B. F. R.
                                              "Peoria Grape Sugar Co."

### Exhibit E.

"Peoria, Ill., April 23rd, 1894.

"The Babcock Co., Evansville, Ind.—Gentlemen: Your letter of the 21st at hand, and note your instruction to ship you one car daily on your order of February 17th. The same has had our attention, and the goods will go forward as instructed.

"Yours, truly,                          Peoria Grape Sugar Co."

The second paragraph does not differ from the first except in counting on a contract marked "Exhibit B." as follows:

"April 5th.              Peoria Grape Sugar Co.              O. K.
"10 cars mxg. glucose........................................... $1.25
"April & May delivery. Price guaranteed, etc. L. J. R."

The third paragraph does not differ from the first except in counting on a contract marked "Exhibit C," as follows:

### "Peoria Grape Sugar Co.

"20 cars mx. glucose................................. $1.50, less frt.
"June, July shipment, buyer's option. Usual guarantee price, etc.
"Apr. 24th.                                          L. J. Reynolds."

The fourth, fifth, and sixth paragraphs count upon the same instruments set forth as exhibits in the first, second, and third paragraphs. The seventh, eighth, and ninth paragraphs count upon the same exhibits as embodying the contracts the breaches of which give rise to the damages sued for. It is further alleged that the plaintiff subsequently sent by mail to the defendant

three printed memoranda, substantially alike, which are filed as exhibits. Then each paragraph proceeds as follows: "But if it should be held that the memorandum which is filed marked 'Exhibit F' formed a part and parcel of the contract, and that the terms therein stated were a part of the terms of the contract between the parties, yet, in either event, the defendant says that the plaintiff has failed and refused to carry out the terms of its contracts in this, that it has failed and refused to ship 500 barrels of the glucose described in said contract." The exhibits last referred to are not copied, for the reason that they cannot be regarded as the basis of the causes of action in either the seventh, eighth, or ninth paragraphs of the counterclaim. The plaintiff has interposed a demurrer to each paragraph of the counterclaim.

J. E. Williamson, for plaintiff.
J. T. Walker, for defendant.

BAKER, District Judge (after stating the facts). The statute of frauds of this state is as follows:

"No contract for the sale of any goods, for the price of fifty dollars or more, shall be valid, unless the purchaser shall receive part of such property, or shall give something in earnest to bind the bargain, or in part payment, or unless some note or memorandum in writing of the bargain be made and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized." 3 Burns' Ind. Rev. St. § 6635 (Rev. St. 1881, § 4910).

The goods agreed to be sold, as disclosed in each paragraph of the counterclaim, largely exceed the price of $50. The sole contract of sale exhibited in each paragraph of the counterclaim is evidenced by the writings copied in the foregoing statement of the case. The defendant does not count upon a verbal contract of sale, coupled with a delivery to and acceptance by the purchaser of a part of the property, nor upon part payment, nor upon the giving of something of value in earnest to bind the bargain. The right to recover damages for failure to deliver the property mentioned in each paragraph of the counterclaim rests solely upon the written instruments upon which the several causes of counterclaim are bottomed. The right of the defendant to recover damages is grounded upon the validity of the contracts evidenced by the notes or memoranda in writing of the bargain. The note or memorandum in writing of the bargain, when relied upon as the foundation of a right to recover damages for failure to deliver the property, must disclose with substantial accuracy every fact material to constitute a contract of bargain and sale. It is, therefore, essential that such a note or memorandum shall contain within itself a description of the property agreed to be sold, by which it can be known or identified, of the price to be paid for it, of the party who sells it, and of the party who buys it. It is settled to be indispensable that the written memorandum should show, not only who is the person to be charged, but also who is the party in whose favor he is charged. The name of the party to be charged is required by the statute to be signed, so that there can be no question of the necessity of his name in the writing. But the authorities have equally established that the name, or a sufficient description, of the other party is indispensable, because without it no contract is shown, inasmuch as a stipulation or promise by one does not

bind him, save only to the person to whom the promise was made, and, until that person's name is shown, it is impossible to say that the writing contains a memorandum of the bargain. In Grafton v. Cummings, 99 U. S. 100, 107, it appeared that the purchaser of property at auction signed an agreement which did not mention the name of the seller. The court, speaking by Mr. Justice Miller, say:

"The statute not only requires that the agreement on which the action is brought, or some memorandum thereof, shall be signed by the party to be charged, but that the agreement or memorandum shall be in writing. In an agreement of sale there can be no contract without both a vendor and a vendee. There can be no purchase without a seller. There must be a sufficient description of the thing sold and of the price to be paid for it. It is, therefore, an essential element of a contract in writing that it shall contain within itself a description of the thing sold, by which it can be known or identified, of the price to be paid for it, of the party who sells it, and the party who buys it. * * * The name of the vendor, or some designation of him which could be recognized without parol proof extraneous to the instrument, was an essential part of that instrument to its validity."

In Sanborn v. Flagler, 9 Allen, 474, the contract was to deliver to plaintiff certain iron. Bigelow, C. J., said:

"It is urged that the paper does not disclose which of the parties is the purchaser and which is the seller, and that no purchaser is in fact named in the paper. This would be a fatal objection, if well founded. There can be no valid memorandum of a contract which does not show who are the contracting parties."

In the case of Ridgway v. Ingram, 50 Ind. 145, the requisites of the note or memorandum in writing referred to in the statute of frauds were considered by the court, and it was there said by Wooden, J., in delivering the opinion of the court, that—

"A memorandum, in order to be sufficient within the statute, must state the contract with such reasonable certainty that its terms may be understood from the writing itself, without recourse to parol proof."

The case of Lee v. Hills, 66 Ind. 475, involved a counterclaim founded upon a memorandum in writing. The counterclaim was for the recovery of damages for the failure to deliver certain personal property sold by the plaintiff to the defendant. It was alleged that by the mutual mistake of the parties, the word "sold" was omitted from before the name of the counterclaimant. It was held that the memorandum, the word "sold" being omitted, was not a note or memorandum in writing of the bargain within the meaning of the statute of frauds, and that parol evidence was not admissible to supply the omitted word in the memorandum. The case of Wilstach v. Heyd, 122 Ind. 574, 23 N. E. 963, was an action to recover damages for the alleged breach of a contract for the sale of a lot evidenced by a memorandum in writing. The memorandum of sale was as follows:

"$200. New Albany, April 23d, 1887.

"Received of J. B. Wilstach two hundred dollars as part purchase money of a lot at $2,560. Balance twenty-three hundred and sixty dollars.

"Geo. Heyd, Admr. Est. Jacob Heyd."

And there were indorsed on the reverse side these words: "The lot No. 14 Ekin Ave." It was held that the memorandum was in-

sufficient to support an action for damages for its breach, and that the words indorsed on the reverse side were insufficient to help it out. It was said that the words indorsed on the reverse side of the memorandum could not be regarded as a part of it because there was nothing in the memorandum referring to them. And it was further said that, even if these words were read into the memorandum, the description of the lot was insufficient, inasmuch as it would require the aid of parol proof to identify it.

The note or memorandum counted on in each paragraph of the counterclaim is insufficient to sustain an action for its breach. It does not disclose the name of the purchaser, and there is nothing in either of the letters copied in the statement which can aid its insufficiency. The description of the property is clearly insufficient. What shall be held to constitute a car of glucose can only be ascertained by parol proof. And the admission of such proof would most likely result in establishing a contract at variance with the understanding of one or the other of the contracting parties. Until the quantity or amount constituting a car load has been mutually agreed upon, the minds of the parties have not met on one of the most important terms of the bargain. The contract is so indefinite in this particular that it is incapable of enforcement. For the court to hear proof, and adjudge that the parties agreed upon 50 barrels of glucose as a car load, would be to permit a material part of the contract to be proved by parol evidence dehors the contract. And the price to be paid for the glucose is equally uncertain. Whether the parties understood that the price to be paid was $1.17½ per 100 pounds, as alleged, or whether it was to be $1.17½ per gallon, is not disclosed by the contract. The understanding of the parties, whatever it was in this regard, rests in parol. Each memorandum discloses the name of the seller, but it fails to disclose the name of the purchaser, the amount of property to be sold and delivered, or the price to be paid therefor. They must be held invalid as contracts for whose breach damages may be recovered. Let the demurrer be sustained.