12685

PARROTT v. DICKSON
HALL v. WALKER *ET AL.*

(148 S. E., 704)

116

*Mr. W. C. Davis,* for appellant,

*Messrs. Dinkins & Stukes,* for appellant,

June 26, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

An action was instituted in the Court of Common Pleas of Clarendon County, this State, by Kate Walker Hall, plaintiff, against Leon Walker et al., in 1919, having for its object the partition and sale of certain real estate, situate in the town of Manning, belonging to the estate of B. A. Walker, deceased, which resulted in a decree of said Court directing that said lands be sold by a dependable auction company, and that the sales so made should be approved, ratified, and confirmed by the Clerk of Court of Clarendon County. The Clerk gave due notice of the sale by advertisement, and further advertised that all sales made by his agent, the First National Auction Company, were subject to his confirmation, and that he reserved the right to reject any and all bids, and that upon his confirmation of the sales and the refusal by the purchaser to comply with his bid, the property would be readvertised and resold at the risk and expense of the defaulting bidder. It appears, however, that the order of sale did not provide for the resale of the property in the event of default by the successful bidder to comply with his bid. The auction company, as the agent of the Clerk, sold the property on the first Monday of March, 1920, and at such

sale the appellant, Joseph S. Dickson, bid off, as the highest bidder, two lots of the property, and paid in the cash portion of his bid, to wit, one-third. A deed was prepared, having for its object the conveyance of the two lots to the said Dickson, but was never executed by the Clerk. Notes and mortgage were also prepared, having for their object the securing of the credit portion of the bid, but were never executed by Dickson. Dickson never paid the additional portion of the purchase money, and no report was ever made by the Clerk of Court of the failure of Dickson to comply with his bid, nor was the property bid in by him ever readvertised or resold. Dickson never went into possession of the lots.

Thereafter, just when it does·not appear, P. M. Parrott, the respondent here, was appointed trustee in the case by the Court of Common Pleas and duly qualified. In July, 1926, he filed his petition as such trustee, setting forth the above-mentioned facts, and prayed that a rule be issued by the Court to said Dickson to show cause, if any he had, why he should not be made to comply with the terms of sale and of his bid. The rule was issued and Dickson made return. After hearing the petition and return and supporting affidavits, his Honor, Judge John S. Wilson, passed an order, ordering Dickson to forthwith pay to the trustee the sum of $2,250, with interest thereon from the 1st day of March, 1920, at the rate of 7 per cent. per annum, and further directing the trustee, upon receipt of the money, to make and deliver to Dickson a deed to the two lots.

Dickson appealed to this Court from Judge Wilson's decree upon twelve exceptions. We do not think it necessary to consider the exceptions separately, but we shall pass upon the questions presented by them.

When the appellant became the successful bidder, he became a party to the suit of Hall against Walker, to the extent to enable him to move in that cause, and as such party he is amenable to the jurisdiction of the Court

therein. *Ex parte: Qualls,* 71 S. C., 87, 50 S. E., 646; *Ex parte: Patterson,* 121 S. C., 78, 113 S. E., 467. The rule issued against him in that action was issued in the exercise of the power of the court of equity to compel compliance with the terms of his bid. *School District of Spartanburg v. Hall,* 122 S. C., 461, 113 S. E., 791.

This appeal is a chancery case, wherein it is the duty of this Court to review the findings of fact. If such findings are sufficiently supported by the evidence to merit the approval of this Court, such findings will not be disturbed.

Appellant concedes that he bid off the lots in question, as alleged in respondent's petition, at the price stated, to wit, $3,380, and that he paid in the cash portion of said bid, to wit, $1,130, but seeks to avoid compliance with the terms of sale on the grounds: (1) That the Clerk of Court never confirmed the sale made by his agent, the auction company; (2) that the lots were never readvertised and resold at the risk and expense of the defaulting bidder; (3) because the contract of sale was not reduced to writing, and there was no note or memorandum thereof signed by him or by any other person thereunto by him lawfully authorized, and is therefore within the Statute of Frauds (Civ. Code 1922, § 5516); (4) because the alleged contract of sale, in reference to the deferred payments, was not to be performed within the space of one year from the making thereof, and was not in writing signed by appellant or by some other person thereunto by him lawfully authorized and is within the Statute of Frauds (Civ. Code 1922, § 5516); (5) because this proceeding is barred by the Statute of Limitations (Code Civ. Proc. 1922, §331); and (6) because the appellant bid on the lots in question at a time when real estate was selling at high prices and desired the lots for speculative purposes; that he was prevented from consummating his purchase, and handling the land as his own, through the delict, negligence, and laches of the Court officers, etc., and through no fault of his

own; that it would be inequitable and unjust now to require him to comply with the terms of said sale, since the land market has gone to pieces, and alleges that he is entitled to, and demands, that the cash portion of his bid be returned to him, together with interest thereon.

To entitle the appellant to relief from liability by reason of his bid, it was incumbent upon him to show by the greater weight of the evidence a valid reason or reasons why he should not be made to comply with the terms of his bid.

Since the Clerk of Court did not reject appellant's bid, but on the other hand accepted payment of the cash portion thereof, it is but reasonable to suppose that he accepted appellant's bid. Indeed, the acceptance of such cash portion was within itself tantamount to the acceptance of his bid and confirmation of the sale.

The order of sale was the chart which guided the Clerk of Court in making the sales therein ordered. Since this order did not provide for the resale of the lands upon the failure of the purchaser or purchasers to comply with the terms of sale, it was wholly without the power of the Clerk of Court to make a resale. The insertion in the advertisement of the sale by the Clerk of Court a notice that, in the event of the failure to comply with the terms of sale, the premises would be resold at the risk of the defaulting bidder could not, and did not, change the terms of sale as provided by the order. The order of sale was a public document, and all bidders, as well as other persons, were charged with notice of its terms.

Appellant had a reasonable time after the sale in which to examine the title to the lots bid off by him. There is no contention that the title was defective. There is no evidence that appellant's bid was rejected by the Clerk, nor is there any evidence that appellant informed the Clerk of his unwillingness to comply with the terms of his

bid. If the Statute of Limitations could run in cases of this kind, we think that before such Statute could begin to run, appellant should have notified the Clerk of his refusal to comply. Certainly, the Statute of Limitations is not applicable, since this is a case in equity. *Fanning v. Bogacki,* 111 S. C., 376, 98 S. E., 137.

When the appellant became the successful bidder and paid in the required one-third of the purchase price, he became the equitable owner of these lots, and the purchase money so paid in became the property of the Walker estate, and the purchaser became indebted to the Walker estate for the balance of the purchase price.

The appellant being a party to the action of Hall against Walker by reason of his being the successful bidder, and having the right to move therein, if he had conceived that his rights were prejudiced by the alleged non-action of the Clerk of Court, his remedy was by rule against said officer. *Ex parte: Qualls, supra; Davis v. Mc-Duffie,* 18 S. C., 495. He could have availed himself of the arm of the Court to compel the Clerk to execute and deliver to him a deed to the lots bid off by him. This he did not do, presumably because he did not want the property for the reason that land values decreased subsequently to the sale. It is true that there has been an unaccountable delay and apparent negligence on the part of the Clerk of Court, but appellant seems to have been quite satisfied with that delay, as he made no effort to have the matter closed up. He could have made a sale of the lots the day he bid them off, or any day thereafter, and thereupon could have assigned his bid. A deed from the Clerk to him was not necessary to enable him to seek a purchaser, but had he wanted a deed he could have applied to the Court for a rule requiring the Clerk to show cause why the deed should not be executed. He did none of these things, but was content to sit idly by. The Court cannot relieve him from his obligation without doing an injustice to the Walker estate. Had land values increased,

there is no doubt but that appellant would have complied, and there is no doubt but that he would have received a deed. We see no reason for relieving him and thereby injuring the Walker estate merely because the value of these lots has decreased. Had appellant made every effort to comply with his bid within a reasonable time after the sale, but was prevented from so doing on account of the negligence of the Clerk, then he might have just cause to ask for relief.

The deed, prepared to be executed by the Clerk conveying these lots to appellant, should have been executed by him. The notes and mortgage prepared to be executed by appellant, securing the credit portion of his bid, should have been executed by him. Equity regards as done that which should have been done.

*The Statute of Frauds.*—We do not think appellant's exceptions as to the Statute of Frauds are well taken.

The auctioneer positively swears that he had a book in which he entered the number of lots sold, the amount of the bid, terms of sale, and the name of the purchaser. Mr. Arrowsmith, attorney for the plaintiff in the case of Hall against Walker, makes affidavit that he knows of his own knowledge that this statement of the auctioneer is true. It is not controverted by plaintiff's return to the rule to show cause, or by any affidavit by him filed. It must be assumed that said statement is true. It is the better and safer practice for an officer directed by the Court to make sales to make proper entries in a book to be filed in the appropriate office. We have been cited to no law, however, and we know of none, which so requires. Where an entry of a sale has been lost, its existence and loss may be proved by the person who made the sale. *Gordon v. Saunders,* 2 McCord, Eq. (7 S. C. Eq.), 151. We do not think this case is in any sense governed by *Ruff v. Hudspeth,* 122 S. C., 391, 115 S. E., 626. That was not a judicial sale, but a sale by private parties, and a memorandum of sale was not signed by the auctioneer, but by a real estate broker. In a judicial sale, the seller is dis-

closed by the proceedings in which the sale is ordered and the advertisement of sale by the official ordered to make the sale. There is, and can be, no uncertainty as to who the seller is. When the sale was made, the auctioneer was the agent of both the seller and purchaser, and the principle announced in *Episcopal Church v. Wiley*, 2 Hill Eq. (11 S. C., Eq.), 584, 30 Am. Dec., 386, is applicable, and such entry is a compliance with the Statute. *Gordon v. Saunders, supra; Leman v. Blackwood,* Harp. (16 S. C. L.), 219.

There was no conclusion for the Circuit Judge to reach other than that the auctioneer had made the entries, as stated in his affidavit, without disregarding absolutely the uncontradicted testimony of both the auctioneer and Mr. Arrowsmith.

Nor do we think that the appellant should be relieved on the ground of laches. In *Peake v. Young,* 40 S. C., 41, 18 S. E., 237, the purchaser was required to comply, in an action for specific performance, although ten years had elapsed since the sale. Respondent had two methods which he might pursue, one by action for specific performance, and the other by rule in the original case in which the sale was ordered. He chose the latter method. It was wholly within the power of the Circuit Court by either method to order the purchaser to comply with his bid, and also to order a resale in case of failure to comply or to order a compliance without ordering a resale.

It is the judgment of this Court that the order appealed from be, and the same hereby is, affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN (dissenting): This is an appeal from an order of his Honor, Judge Wilson, in a proceeding instituted by P. M. Parrott as trustee who appears to have succeeded to the rights of the Clerk of Court of Clarendon County, against Joseph S. Dickson, to require him to comply with the terms of a certain judicial sale made by the

Clerk of Court, at which Dickson bid off certain lots. The proceedings consisted of a petition, rule to show cause, return, and certain affidavits.

It appears that in the year 1919, Kate Walker brought an action against Leon Walker et al., for the partition of certain real estate in the town of Manning, which had belonged to B. A. Walker, deceased. It resulted in a decree of sale directing the Clerk of Court, through the agency of a dependable auction company, to sell the property. At the sale in March, 1920, the appellant Dickson bid off two lots at $3,-380, and paid the cash portion, $1,130 in cash.

The Clerk prepared the form of a deed from himself to Dickson covering the lots and notes and a mortgage from Dickson to him securing the unpaid portion of the purchase price. These papers were never in fact executed by either party, no demand therefor by either having been made upon the other. Dickson never paid or offered to pay the balance of the purchase price; no report was made by the Clerk of such failure; the property was not readvertised or resold; Dickson never went into possession of the lots, apparently preferring to lose what he had paid rather than pay the balance and take title. The matter was allowed to sleep until the Clerk of Court went out of office, and at a later date, exactly when does not appear, in some kind of a proceeding, not defined, Parrott was appointed by the Court of Common Pleas trustee of the notes and mortgages connected with the partition proceedings. On July 22, 1926, more than six years after the sale, Parrott instituted the present proceedings. No explanation of the long delay in the matter has been presented to the Court. It is easy to comprehend Dickson's indisposition to complete the transaction, as the property had steadily decreased in value due to the general deflation; but not so in reference to the Clerk and the parties who were interested in the proceeds of the sale or their attorneys.

The appellant, Dickson, made a return to the rule to show cause, setting up various defenses, only two of which, in my

view of the case, need to be considered: The Statute of Frauds and the Statute of Limitations. His Honor, Judge Wilson, on May 12, 1927, signed the following order:

"This matter comes on before me upon the verified petition and the return, rule to show cause and affidavits.

"After hearing arguments of counsel for petitioner and for respondent,

"It is ordered, that the said Joseph S. Dickson, respondent, shall forthwith pay to P. M. Parrott as trustee, petitioner, the sum of Twenty-two Hundred and Fifty Dollars, with interest thereon from the first day of March, 1920, at the rate of seven per cent. per annum, and that the said P. M. Parrott as trustee shall upon receipt of the aforementioned sum of money make and deliver unto Joseph S. Dickson, the respondent, a deed to the premises described in the petition, conveying unto the respondent a fee-simple title to said premises."

From it Dickson has appealed upon exceptions which fairly raise the questions hereinafter considered.

I. *The Statute of Frauds.*—The appellant contends that there was no such memorandum of the sale made by the auctioneer at the time of the sale as would satisfy the requirements of the Statute. He attempted to sustain this contention by the affidavits of two purchasers of other lots at the sale; both of whom deposed that the auctioneer made no written entries of any sales and had no purchaser to sign a memorandum card of his purchase. Against this contention were the affidavits of the auctioneer and the attorney for the plaintiff. Both deposed to entries made by the auctioneer and the signing of memorandum cards of their purchases by the purchasers. Unfortunately the book containing the entries and the memorandum cards has been lost. The testimony of the auctioneer was to the effect that he "had a book in which was entered the number of the lot, the amount of the bid, terms of sale and the name of the purchaser, and that each purchaser signed a card containing all of this data. * * *

That after deponent accepted the bid of the said Joseph S. Dickson, the same was entered in the aforesaid book and the purchaser signed one of the aforementioned cards."

In the absence of the lost book and memorandum cards, the extent of the entries is defined in the testimony of the auctioneer, and it fails to show the entry of the name of the seller.

In 20 Cyc., 258, it is declared: "In order to render an oral contract falling within the scope of the Statute of Frauds enforcible by action the memorandum thereof must state the contract with such certainty that its essentials can be known from the memorandum itself, or by a reference contained in it to some other writing, without recourse to parol proof to supply them. * * * Thus an auctioneer's memorandum must in itself or taken in connection with the proper captions in the entry book contain the essential terms of the contract of sale. So, a receipt for money, if relied on as a memorandum, must state the essentials to the agreement. * * * The parties to the contract cannot be left to be shown by parol but must be stated in the memorandum. Thus in a memorandum of a contract for sale it must appear who is the buyer and who the seller." In note, at page 262, it is said: "An auctioneer's memorandum must show who is the vendor, or who is the vendor's agent on account of whom the auctioneer makes the sale."

In *Nichols v. Johnson,* 10 Conn., 192, the memorandum was a book on the cover of which was written "A's memorandum of B's property received by assignment," and on a leaf of the book under the caption, "Sales at Auction, March 6, 1826," was this entry, "B's right in C's estate, sold to D, $60"; in an action by the auctioneer against D for the purchase money, it was held that the memorandum did not show with requisite certainty that A, the auctioneer, was the vendor of the estate sold.

In *Frank v. Eltringham,* 65 Miss., 281, 3 So., 655, the Court said: "The note or memorandum of the bargain is not

sufficient.   *   *   *   It fails to show who is seller and who is buyer."

See, also, *O'Sullivan v. Overton,* 56 Conn., 102, 14 A., 300; *Banta v. Newbold,* 108 Kan., 578, 196 P., 433; *Mentz v. Newwitter,* 122 N. Y., 491, 25 N. E., 1044, 11 L. R. A., 97, 19 Am. St. Rep., 514; *Peoria Co. v. Babcock* (C. C.), 67 F., 892; *Grafton v. Cummings,* 99 U. S., 100, 25 L. Ed., 366.

It does not seem necessary to cite any other authority upon the proposition than the case of *Ruff v. Hudspeth,* 122 S. C., 391, 115 S. E., 626, though perhaps 100 could be cited. In that case the Court held: "That the memorandum so required to be in writing must contain all the essential elements of a contract is too well settled in this and other jurisdictions to require the citation of authority. It requires two parties to make a contract. That a writing which names one party and does not indicate who the other party is does not set forth an essential element of the contract would seem to follow as a necessary sequence. Hence, the conclusion that the names of the vendors, or some designation of them which can be recognized without resort to parol proof, is an essential part of such a contract for the sale of real estate as will fulfill the requirements of the Statute of Frauds is approved by the great weight of authority." To sustain this proposition the Court by Mr. Justice Marion cites *Grafton v. Cummings,* 99 U. S., 100, 25 L. Ed., 366, and a wealth of other authority.

II. *The Statute of Limitations.*—The sale was had in March, 1920; the present proceeding was instituted in July, 1926, more than six years after the right of action on the part of the Clerk accrued. The question is: Is it barred by the lapse of time?

There are certain propositions announced in the opinion of Mr. Justice Blease which I do not think are open to question, but which I do not think affect the question of the limitation of the action.

When Dickson became the successful bidder at the sale, he became a *quasi* party to the original partition suit, and was chargeable with all proceedings had thereafter in the case. By his assumed connection with the case he was entitled to move in the case for such relief as he might consider himself entitled to; and he was subject to be moved against by the officer making the sale or by the parties interested therein. His relief, if he had desired to insist upon it, consisted of a demand for the execution of a deed upon his complying with the terms of the sale. That right accrued immediately, and it seems manifest that it would be barred after the expiration of the statutory period of six years. The relief to which the other side would have been entitled consisted of a demand upon him to comply and a tender of a deed. The other side had double remedies to enforce their rights: A rule upon Dickson for an order requiring him to comply or submit to a resale of the property at his risk; and an action for the specific performance of the contract into which he may have entered. The former remedy was available because of Dickson's relation to the case created by his bid; the latter was not superseded by the availability of that remedy. *Peake v. Young,* 40 S. C., 41, 18 S. E., 237. Both remedies are based upon precisely the same equitable principles.

While strictly speaking the Court of equity will not apply the Statute of Limitations as would be applied by a Court of law in a law case, the result is practically the same, as appears from the following exposition found in 17 R. C. L., 737: "Although the Statute of Limitations does not apply to demands which are purely equitable or where the jurisdiction of Courts of law and equity is not concurrent, Courts of equity nevertheless frequently act on the analogy of the Statute of Limitations and in harmony with the maxim *equitas sequitur legem,* provided the bill is one for relief as distinguished from the class of bills which are not deemed bills for relief. In such cases, chancery is said to act in obedience to the spirit of the Statute, and to adopt the reasons

and principles on which it is founded, rather than its literal requirements. In harmony with this fundamental principle, a Court of chancery may refuse its aid when, from the lapse of time, an action at law could not be maintained, but, on the other hand, under ordinary circumstances a suit in equity will not be barred by laches before the time fixed by the analogous Statute of Limitations at law. One way of expressing this rule is to say that chancery courts adopt the time fixed by Statutes of Limitations for barring claims at law in analogous cases as the period at the end of which they will conclude a recovery in equity. Thus it is that Courts of equity, acting independently of any Statutes of Limitation, nevertheless refer frequently to these Statutes for no other purpose than as furnishing a convenient measure for the length of time that ought to operate as a bar in equity of any particular demand. In other words, in practical effect, a chancellor applies the Statute of Limitations with the same substantial effect and same construction as it receives in Courts of law."

The rule governing a Court of equity in the matter of specific performance is thus expressed in 17 R. C. L., 743: "A party coming to a Court of equity for specific performance must show that there are equity and good conscience in support of his claim to relief, and that his application is made within reasonable time, in view of all the circumstances of the case."

I do not think that the petitioner has brought himself within this principle. For some unaccountable reason the matter has been delayed for more than six years. I do not think that it was incumbent upon Dickson any more than upon the Clerk to move, if he was not anxious to acquire the property. If he had waited six years to tender the balance of the purchase price and demand a deed, and in the meantime real estate had increased in market value, the Court would not have listened to his demand for a moment. The same rule should be applied to the other side when condi-

tions have been reversed. The plaintiff is in 'Court demanding relief; the burden is upon him to establish his right to it, which I do not think under the principles of law he has done.

The decree is not in proper shape anyhow; if the petitioner should be adjudged entitled to any relief, it should have been to an order of resale at the risk of the former purchaser, and not what it practically is, a decree for specific' performance, when the petition did not ask for it.

I think, therefore, that the decree should be reversed, and the petition dismissed.