## GRAFTON v. CUMMINGS.

In order to satisfy the requirements of the Statute of Frauds of New Hampshire, the memorandum in writing of an agreement for the sale of lands which is signed by the party to be charged, must not only contain a sufficient description of them, together with a statement of the price to be paid therefor, but in that memorandum, or in some paper signed by that party, the other contracting party must be so designated that he can be identified without parol proof.

ERROR to the Circuit Court of the United States for the Southern District of New York.

On the sixteenth day of May, 1871, the hotel known as the Glen House, at the foot of the White Mountains in New Hampshire, together with its furniture, was bid off at an auction sale by Grafton at the price of $90,000. At the end of the ten days allowed by the terms of the sale for examination of the title, three deeds were tendered him which were supposed to convey the title. He refused to accept them, or pay the purchase-money, or otherwise complete the contract of purchase. The property was again advertised for sale, and sold for $61,000 ; and the present suit was brought against him to recover the difference in the amounts for which the property sold at these two sales, as damages for failure to perform the first contract.

The Statute of Frauds of New Hampshire is in these words : " No action shall be maintained upon a contract for the sale of land, unless the agreement upon which it is brought, or some memorandum thereof, is in writing, and signed by the party to be charged, or by some person by him thereto authorized by writing." The agreement given in evidence on the trial by Cummings, the sole plaintiff, consisted of a paper writing signed by Grafton, certain printed matter on the margin of that writing, and the advertisement mentioned in the writing so signed. They are as follows : —

"I, the subscriber, do hereby acknowledge myself to be the purchaser of the estate known as the Glen House, with furniture belonging to it, in Green's grant, New Hampshire, and sold at auction Tuesday, May 16, 1871, at 11 o'clock A.M., and for the sum

of $90,000, the said property being more particularly described in the advertisement hereunto affixed; and I hereby bind myself, my heirs and assigns, to comply with the terms and conditions of the sale, as declared by the auctioneer at the time and place of sale.

"JOSEPH GRAFTON."

Upon the margin of said agreement were written and printed the following : —

"TERMS OF SALE.

"Ten days will be allowed to examine the title, within which time the property must be settled for. Five thousand dollars will be required of the purchaser on the spot, which will be forfeited to the seller if the terms and conditions are not complied with; but the forfeiture of said money does not release the purchaser from his obligation to take the property. Fifteen thousand dollars to be paid on the delivery of the deed, and one-half of the purchase-money to be paid Sept. 1, 1871, the remaining balance to be paid Sept. 1, 1872.

"The property is sold subject to the conditions of the sale of the stage-route, stages, &c., which are, that the proprietors of the route shall have the exclusive business of the house."

The advertisement referred to in the foregoing paper as being thereunto affixed was as follows : —

"GLEN HOUSE AT AUCTION.

"The famous summer resort at the foot of Mount Washington, known as the Glen House, together with the land, furniture, mill, and out-buildings, will be sold at public auction at Gorham, N. H., Tuesday, May 16, 1871, at 11 o'clock A.M.

"May 2, 1871.

"VALUABLE HOTEL PROPERTY FOR SALE.

"The favorite summer resort known as the Glen House, situated at the foot of Mount Washington and at the commencement of the carriage road to the summit, will be offered for sale, together with the land, containing about one thousand acres (well timbered), all the out-buildings, stables, and mill on the same, also the furniture, staging, mountain carriages, horses, &c. The house contains some two hundred and twenty-five rooms, capable of accommodating between four and five hundred guests. The whole property, if not disposed of at private sale previous to the 1st of May, will be sold at public auction to close the estate of the late J. M. Thompson.

Notice of the time and place of sale will be given hereafter. Any person desirous of seeing the property, which is in thorough repair, or wishing to make any inquiries, can do so by applying to J. W. Weeks, administrator, Lancaster, N. H., or S. H. Cummings, Falmouth Hotel, Portland, Me."

The bill of exceptions adds, that when this paper was put in evidence it was indorsed " A. R. Walker, auctioneer and agent for both parties." It was not fully shown when this indorsement was made, and there was some evidence that it was not there at the time when the deeds which Grafton refused to accept were tendered. The court, however, instructed the jury, that if it was done at any time before the commencement of this action it was sufficient.

Evidence was admitted to show that at the time of the sale another paper was read by the auctioneer affecting the terms of the sale, but it was not among the papers subscribed by defendant.

The following letter was, notwithstanding the objection of the defendant, read in evidence by the plaintiff : —

"DEAR SIR, — I came up to-day hoping to confer with you in regard to the purchase of the Glen House. I don't know but what Lindsay and Barron intend to take it. Some things they said indicated as much, and Grafton offered to let them take it at his bid, and let them have their own time to pay him his claim. But I find Mrs. Thompson is strongly attached to the place. The judge of the Probate Court will make her an allowance. It occurred to me that the purchase might be made in this way. One-tenth would be $9,000 : —

| | | |
|---|---|---|
| S. H. Cummings, $\frac{3}{10}$ . . . . . . . . | $27,000 |
| Lindsay, $\frac{3}{10}$ . . . . . . . . . . | 27,000 |
| Barron, $\frac{3}{10}$ . . . . . . . . . . | 27,000 |
| Mrs. Thompson, $\frac{1}{10}$ . . . . . . . . | 9,000 |
| | $90,000 |

"This would relieve you from most of the care. It would give Mrs. Thompson an interest in it. The $9,000 due Grafton is as much as her share, and I will agree to let it be until she has time to pay it from the profits. I go home to-morrow, but I wanted to propose this to you, as Grafton really don't want any thing to do with the property, though he thinks Stearns, or some one of their

leading hotel men, may have some young man that they would like to put into the house. He will try to dispose of it in that way, but hopes that before doing it I shall be able to write to him that it will be taken up here.

"Very truly yours,

"WOODBURY DAVIS.

"S. H. CUMMINGS, Esq."

There was a judgment for the plaintiff, whereupon Grafton sued out this writ of error.

*Mr. A. J. Vanderpoel* and *Mr. James W. Gerard* for the plaintiff in error.

The action cannot be maintained. No vendor is named in the paper relied on as the agreement. It is therefore invalid on its face. *Sherburne et al.* v. *Shaw*, 1 N. H. 157; *Boyce* v. *Green*, Batt. 608; *Williams* v. *Lake*, 2 El. & El. 349; *Williams* v. *Byrnes*, 9 Jur. N. S. 363; *Potter* v. *Duffield*, Law Rep. 18 Eq. 4; *Champion* v. *Plummer*, 1 New Rep. 252; *Wain* v. *Warlters*, 5 East, 10.

The indorsement by the auctioneer, in which no vendor is named, did not make the agreement sufficient under the Statute of Frauds. *Potter* v. *Duffield*, *supra*; *Rossiter* v. *Miller*, 48 L. J. N. s. 17; Browne, Stat. Frauds, sect. 374.

In the matters put in evidence, the only agreement of Grafton which, if any, the jury could consider was that signed by him, referring to the terms and conditions of sale. The connection between it and some other paper not so signed by him cannot be shown by parol evidence, but must appear by internal evidence derived from the signed memorandum itself. The declarations of the auctioneer were not admissible. *Johnson* v. *Miller*, 35 N. J. L. 344; *Boydell* v. *Drummond*, 11 East, 142; *Coles* v. *Trecothick*, 9 Ves. 250; *Clunan* v. *Cooke*, 1 Sch. & Lef. 22; *Parkhurst* v. *Van Cortlandt*, 1 Johns. (N. Y.) Ch. 273; *Dobell* v. *Hutchinson*, 3 Ad. & E. 355; *First Baptist Church* v. *Bigelow*, 16 Wend. (N. Y.) 28; *O'Donnell* v. *Leeman*, 43 Me. 158; *Knox* v. *King*, 36 Ala. 367; 1 Smith, Lead. Cas. 465, notes to *Birckmyr* v. *Darnell*.

No support to the argument of Cummings can be derived from *Beckwith* v. *Talbot*, 95 U. S. 289.

Conditions of sale read before the biddings commenced,

but not annexed to the catalogue on which the purchasers' names were entered, nor referred to therein, cannot supply the terms of sale omitted in the catalogue. *Hinde* v. *Whitehouse*, 7 East, 558; *Kenworthy* v. *Scofield*, 2 Barn. & Cress. 945. Nor, where the signed memorandum contains no reference to them, are handbills and newspaper notices admissible, although published at the time of sale and there circulated. *O'Donnell* v. *Leeman, supra; First Baptist Church* v. *Bigelow, supra; Wright* v. *Weeks*, 25 N. Y. 153; *Riley* v. *Farnsworth*, 116 Mass. 223.

Cummings claims that the declarations of the auctioneer were admissible, because he is the agent of seller and purchaser, so that his acts and declarations are competent. He is not the agent of the purchaser until the premises are struck down, and his agency is limited to then and there signing the contract.

A contract, as originally entered into, cannot at law be altered by evidence of a parol variation in favor of either the plaintiff or the defendent. Dart, Vend. and P. 451; Sugden, Vend. and P. 171; *Goss* v. *Nugent*, 2 Nev. & M. 33; *Blood* v. *Goodrich*, 9 Wend. (N. Y.) 68; *Sanderson* v. *Graves*, Law Rep. 10 Eq. 234.

A parol waiver of the whole contract is sometimes allowed, but never where the effect of the waiver is to substitute a new contract for the original one. *Goss* v. *Nugent*, 5 Barn. & Adol. 58; *Sanderson* v. *Graves, supra.*

*Mr. Thomas H. Hubbard* and *Mr. Henry Heywood*, contra.

There was a sufficient memorandum of the contract in writing to satisfy the requirements of the Statute of Frauds. *Walker* v. *Whitehand*, 16 Wall. 314; Browne, Stat. Frauds, sect. 373; *Allen* v. *Bennett*, 3 Taunt. 169; *Beckwith* v. *Talbot*, 95 U. S. 289. The objection that the memorandum which Grafton signed does not show who was the vendor, is answered by the letter written to Cummings by Davis, and also by the printed advertisement pasted to, and thus forming a part of, the memorandum. It is, in substance, a statement that Cummings was prepared to treat with purchasers, and to give them all desired information about the property. It thus designated him either as the seller, or the agent of the seller. Either designation complies with the statute. No formality is requisite in this respect. The memorandum is sufficient, if, in addition to the signature

of the party to be charged, it appear with reasonable certainty who the other party is, and parol evidence is admissible to show that the person whose name appears on the memorandum acted as agent for one of the contracting parties. *Gowen* v. *Klous*, 101 Mass. 449; Browne, Stat. Frauds, sect. 373; *Dykers* v. *Townsend*, 24 N. Y. 57; *Salmon Falls Manufacturing Co.* v. *Goddard*, 14 How. 446.

The indorsement written upon the memorandum sufficiently indicates the other contracting party; and the auctioneer who made it being the agent of both parties at the time of the sale, and of the seller afterwards until the duties of his agency were accomplished, he could bind them by his signature. *Mews* v. *Carr*, 1 Hurlst. & Nor. 484; *Kenworthy* v. *Schofield*, 2 Barn. & Cress. 945; *Rice* v. *Grove*, 22 Pick. (Mass.) 158; *Lerned* v. *Wannemacher*, 9 Allen (Mass.), 412; *Learned* v. *Jones*, id. 419; *Williams* v. *Bacon*, 2 Gray (Mass.), 387; *Coddington* v. *Goddard*, 16 id. 436; *Sanborn* v. *Chamberlin*, 101 Mass. 416; *Gowen* v. *Klouse*, id. 449; *Hunter* v. *Geddings*, 97 id. 41; *Sievewright* v. *Archibald*, 1 Langdell, Select Cases, 452; 17 Q. B. 103; Browne, Stat. Frauds, sects. 352 *a*, 353, 353 *a*, 364, 369.

The memorandum consists of all writings connected, physically, or by distinct reference made in one to the other. Browne, Stat. Frauds, sects. 346–349; *Salmon Falls Manufacturing Co.* v. *Goddard, supra.*

Inasmuch as it was a memorandum, and not the contract itself, parol evidence was admissible to show that as put in evidence it conformed to the contract and expressed its essential terms. *Sievewright* v. *Archibald*, 17 Q. B. 103; *Parton* v. *Crofts*, 33 Law Jour. 189; *McLean* v. *Nicoll*, 7 Jur. N. S. 999; *Lerned* v. *Wannemacher, supra;* 1 Langdell, Select Cases, 1032 *et seq.*, and cases there cited.

Parol evidence was also admissible, to the same extent that it would have been to explain ambiguities, to identify the subject-matter to which the writing referred; to show the situation of the parties at the time the writing was made, and the circumstances under which the parties executed it. Benjamin, Sales, 156, 157; Browne, Stat. Frauds, sects. 409, 409 *a;* *Blossom* v. *Griffin*, 13 N. Y. 569; *Springsteen* v. *Samson*, 32 id. 703.

Somewhat greater latitude than is permitted in the case of written contracts should be allowed in proving by parol the details of such a contract as this, since the memorandum is required to contain only the essential elements, and not every individual incident in the contract. *McLean* v. *Nicoll, supra; Salmon Falls Manufacturing Co.* v. *Goddard, supra; Linsley* v. *Tibbals,* 40 Conn. 522.

MR. JUSTICE MILLER, after stating the facts, delivered the opinion of the court.

The bill of exceptions in this case is voluminous, containing, apparently, every thing said and done on the trial. Sixty-one errors are assigned to this court.

We shall confine ourselves to the examination of one of them. That one presents the question, as it occurs in various forms in the record, whether there was a sufficient memorandum of the contract in writing, under the Statute of Frauds of New Hampshire, to sustain the action.

It is proper to observe that the objection to the papers is not that they were not signed by Grafton, the party charged, for he signed himself the principal instrument. The reference to the others, and their annexation to that, are sufficient to make them a part of the paper which he did sign. We shall, also, for the purpose of this inquiry, take it that Walker was the auctioneer, and that his name indorsed on the instrument gives it all the value which it could have if signed at any time necessary for that purpose.

The distinct objection to the instrument, as so presented, is that the other party to the contract of sale is not named in it, and can only be supplied by parol testimony.

The statute not only requires that the agreement on which the action is brought, or some memorandum thereof, shall be signed by the party to be charged, but that the agreement or memorandum shall be in writing. In an agreement of sale there can be no contract without both a vendor and a vendee. There can be no purchase without a seller. There must be a sufficient description of the thing sold and of the price to be paid for it. It is, therefore, an essential element of a contract in writing that it shall contain within itself a description of the

thing sold by which it can be known or identified, of the price
to be paid for it, of the party who sells it, and the party who
buys it. . There is a defect in this memorandum in giving no
indication of the party who sells. If Grafton was bound to
purchase, it was because somebody was bound to sell. If he
was bound to pay, somebody was bound to receive the money
and deliver the consideration for the price so paid.

There can be no bargain without two parties. There can be
no valid agreement in writing without these parties are named
in such manner that some one whom he can reach is known
to the other to be bound also. No one is bound in this paper
to sell the Glen House, or to convey it. No one is mentioned
as the owner, or the other party to this contract. Let it be
understood that we are not discussing the question of mutuality
in the obligation, for it may be true that if a vendor was
named in this paper, the offer to perform on his part would
bind the party who did sign. But Grafton did not agree to
buy this property of anybody who might be found able and
willing to furnish him a title. He was making a contract
which required a vendor and a vendee at the time it was made,
and he is liable only to that vendor. The name of that vendor,
or some designation of him which could be recognized without
parol proof extraneous to the instrument, was an essential part
of that instrument to its validity.

It is alleged that Stephen H. Cummings, the plaintiff in this
action, was the vendor, and that this sufficiently appears in the
papers annexed to the memorandum and incorporated into the
statement of this case.

The first ground on which it is sought to maintain this prop-
osition is that Walker's indorsement is sufficient for that
purpose.

It is very clear that Walker did not intend to hold himself out
as the vendor in this case, because he describes himself as auc-
tioneer and agent for both parties. If he had been sued on this
contract by Grafton for failing to tender sufficient deeds of con-
veyance, it would have been a good answer to the action that he
describes himself in the paper on which he was sued as merely
an auctioneer in the matter, and in that sense as agent, and not
principal. He could not in the act of signing that paper be

the agent of Grafton, for Grafton signed it for himself.  The statement, therefore, did not mean that he signed for both parties, because he did not, and could not, sign as agent for Grafton.

What did he mean by putting his name there?  It can have no other fair meaning than simply to say, as he does, I was the auctioneer who struck off this property.

But concede that he meant to represent the other party in that contract, a contract in which he takes care not to bind himself, who is that other party?  What light does the writing of his name as auctioneer and agent throw on that question?  Literally none.  An anxious reader of the whole paper and its attachments would know as little who sold, or for whom Walker was selling, after his signature as he did before.  To say agent for both parties may show he was agent for the one party whose name is not there, but it does not show who was that party.  The paper without Walker's indorsement shows who was the purchaser, but neither with nor without it does it show who was the seller.

It is next argued that the reference to Cummings's name in the advertisement annexed to the paper signed by defendant is sufficient for this.  The statement is that the sale is made to close out the estate of the late Mr. Thompson ; and "any person desirous of seeing the property, which is in thorough repair, or wishing to make any inquiries, can do so by applying to J. W. Weeks, administrator, Lancaster, N. H., or S. H. Cummings, Falmouth Hotel, Portland, Me."  Three persons are here mentioned.  One, Mr. Thompson, was dead and could not be the vendor.  Another, Mr. Weeks, though not mentioned as a party selling, it may be inferred had some interest in the sale as administrator of Thompson.  But Weeks does not sue, and if his name had been inserted in the contract as vendor, it would not have sustained the present action.  But the true intent of that advertisement was not to describe the vendors, or even the owners of the land, but to designate persons who might give any information about the property, which one thinking of purchasing would need.  This did not require that the person referred to should be the owner of the land or the party selling it.  Such inquiries could as well be

answered by a·lawyer, a real-estate agent, the latest keeper of the hotel, or one who had been his clerk, as by the owner. There did not arise, therefore, any implication from the reference to Cummings that he was owner, or even part owner, or that he was holding himself out as the party selling.

The next effort to sustain the instrument sued on as valid may be said to be a vague effort to show, by the verbal history of the transaction, that defendant recognized Cummings as vendor by subsequent interviews and negotiations with him on the subject of the sale. And special importance in this part of the case is attached to a letter written by Davis, a lawyer, to Cummings.

The letter is liable to three objections, as a recognition by defendant of Cummings as the party of whom he had purchased.

1. No such recognition is to be found in the letter. It consists of suggestions on the part of Davis of what had better be done with the property; that Cummings, Mrs. Thompson, and Grafton ought to take it; and that Grafton really don't wish to have any thing to do with it. It is not even a recognition of the validity of the purchase, and nowhere speaks of Cummings as the vendor, but he might rather be supposed to be a purchaser with Grafton.

2. Davis does not profess to be speaking or acting for Grafton. He writes in his own name. It is shown by other evidence that, either as attorney or for himself, he controlled the larger part of the debts against Thompson's estate, which made the sale necessary, and it may be fairly inferred that it was in this character he spoke.

3. There is no satisfactory evidence that he was authorized to act for Grafton in that transaction, and none whatever that he was authorized by him to write that letter. The New Hampshire statute requires that the authority of an agent to charge a party shall be in writing, and there is no pretence that Davis had any such authority from Grafton.

These views of the proper construction of the statute are amply sustained by authority.

In the leading case of *Wain* v. *Warlters* (5 East, 10), decided by Lord Ellenborough under the English statute, the same as

that of New Hampshire on the point in question, that eminent judge said: "The question is whether that word (agreement) is to be understood in a loose, incorrect sense in which it may be sometimes used as synonymous to promise or understanding, or in its more correct sense of signifying a mutual contract on consideration between two or more parties." He held the latter to be the true construction, and that all its essential elements must appear in the memorandum, including the consideration, which in that case was absent. This has been held to be the law in England ever since.

In *Williams* v. *Byrnes*, before the Privy Council, reported in 9 Jur. N. S. 363, decided in 1863, the defendant had in a letter to one Hardy told him that he would furnish the funds to pay for a steam-engine if the latter would find and purchase a suitable one. Hardy made a verbal contract for the engine, and the vendor sued defendant on this memorandum. Coleridge, J., in delivering the judgment of the Privy Council, said: "This language" (the language of the statute) "cannot be satisfied unless the existence of a bargain or contract appear evidenced in writing ; and a bargain cannot so appear unless the parties to it are specified, either nominally or by description or reference ; " and the ruling of the Chief Justice that this could be done by extrinsic proof as to who was the vendor was reversed. The case is precisely in point with the one before us.

*Sale* v. *Lambert* (Law Rep. 18 Eq. 1) was a sale of real estate in which the party charged was the vendor. The memorandum was signed by Sale, the purchaser, for himself, and by George Jackson, the auctioneer, for the vendor. This memorandum was indorsed on a bill of particulars of the conditions of the sale, in which it was said that the property was sold by the proprietor. The Master of the Rolls held that the word " proprietor " sufficiently described the vendor; and ascertained who was the party for whom the auctioneer signed. But in *Potter* v. *Duffield* (id. 4), he held that the words " confirmed on the part of the vendor," and signed " Beadels," who were the auctioneers, did not sufficiently designate who the vendor was, and that a suit against the owner could not be sustained on the memorandum. He said: " If you could go into the evidence

as to the person who is described as vendor by Mr. Beadel, the answer would be that Polley was that person. But that is exactly what the act says shall not be decided by parol evidence."

In the case before us, Walker, the auctioneer, does not even say that he signed for the vendor, as Beadel did in the last case cited.

But the case which should have most weight in informing our judgment is *Sherburne et al.* v. *Shaw* (1 N. H. 157), because it is an authoritative construction of the statute of the State where this contract was made and the land is situated, to which the contract relates, made by the highest court of that State sixty years ago and never overruled. The case is so perfectly parallel to the one under consideration that its circumstances need not be repeated. It is sufficient to say that the want of the vendor's name in the memorandum was held fatal to any right of action, though the auctioneer's name was signed to a memorandum otherwise sufficient. The concluding language of the court is, that " the written evidence which hath been offered to prove the contract declared on, as it fails to give any intimation that plaintiffs were one of the parties to that contract, must itself be considered fatally defective and inadmissible."

The same doctrine is laid down in the excellent work of Mr. Browne on the Statute of Frauds, sects. 372 to 375, and the authorities fully cited. He also speaks of the case of *Salmon Falls Manufacturing Co.* v. *Goddard* (14 How. 446) as one which might be saved from conflict with the general rule, on the ground that a bill of parcels detailing the purchase was made out and sent to the purchaser, and accepted by him as such. In that case Mr. Justice Curtis delivered an able dissenting opinion in which Mr. Justice Catron and Mr. Justice Daniel concurred. It may be doubted whether the opinion of the majority in all it says in reference to the use of parol proof in aid of even mercantile sales of goods by brokers is sound law. It certainly furnishes no rule to govern us in the exposition of the statutes of New Hampshire, concerning contracts of sale of real estate within its own borders, where it conflicts with the decisions of the courts of that State on the subject.

Defendant in error relies mainly on that case and the later one of *Beckwith* v. *Talbot*, 95 U. S. 289. The latter case, however, affords no support to the argument of counsel. The defendant in that action was charged, it is true, on a memorandum in which his name was not found. But he produced that memorandum from his own possession on the trial, and letters of his written to the plaintiff while the agreement was so in his possession were given in evidence, which referred to the agreement and acknowledged its obligatory force on himself, in terms that required no parol proof to identify it as the agreement to which he referred. This was within all the cases a sufficient signing of the memorandum, though found in another paper, written by the party to be charged, to comply with the Statute of Frauds, and so this court held.

We are of opinion that there was no sufficient memorandum in writing of the agreement on which this suit was brought to sustain the verdict of the jury.

The judgment of the Circuit Court will, therefore, be reversed, and the case remanded to that court with instructions to set aside the verdict; and it is

*So ordered.*

MR. JUSTICE BRADLEY took no part in the decision of this case.