## LUSKY *v.* KEISER.

### (*Nashville.*  December Term, 1913.)

1. **FRAUDS, STATUTE OF.  Sale of real estate.  "Party to be charged."**

   The words "party to be charged," as used in the statute of frauds requiring a memorandum of a sale of real property signed by the party to be charged, means the owner of the realty rather than the party attempted to be charged or held liable in an action based on the memorandum.  (*Post, pp.* 708, 709.)

   Cases cited and approved:  Frazer v. Ford, 39 Tenn., 464; Lee v. Cherry, 85 Tenn., 707.

2. **FRAUDS, STATUTE OF.  Sale of real property.  Necessity of written contract.**

   It is not necessary that a contract for the sale of real property be in writing, provided there is a writing which contains evidence of the essential terms of the oral contract, and which is signed by the party to be charged.  (*Post, p.* 709.)

3. **FRAUDS, STATUTE OF.  Sale of land.  Written memorandum.**

   A written offer to purchase land when signed and accepted may constitute a memorandum of the contract sufficient to satisfy the statute of frauds, though it consist of several contracts.  (*Post, p.* 709.)

   Cases cited and approved:  Lee v. Cherry, supra; Otis v. Payne, 86 Tenn., 666.

4. **FRAUDS, STATUTE OF.  Selling of land.  Written memorandum.**

   Complainants executed to a broker a contract authorizing the latter to sell a tract of land belonging to one of them, the instrument containing a description of the land, the price and terms, and an agreement to make a deed to any good purchaser complying with the terms procured by the broker.  The broker thereafter obtained defendant's consent to purchase,

   128 Tenn. 45

and induced her to sign an addenda on such contract reciting that she accepted the proposition. *Held,* that such contract was merely to define the relation between complainants and the broker, and that it did not constitute a sufficient memorandum of the contract between complainants and defendant to bind her to purchase under the statute of frauds. (*Post,* *pp.* 709-716.)

Cases cited and approved:  Lee v. Cherry, supra; Grafton v. Cummings, 99 U. S., 100; Lewis v. Wood, 153 Mass., 321; Weatherhead v. Ettinger, 78 Ohio St., 104; Jordan v. Mahoney, 109 Va., 133; Donnell v. Currie (Tex. Civ. App.), 131 S. W., 88; Evans v. Stratton, 142 Ky., 615; Davis v. Brigham, 56 Ore., 41.

Cases cited and distinguished:  Haydock v. Stow, 40 N. Y., 363; Fletcher v. Underwood, 240 Ill., 554; Ullsperger v. Meyer, 217 Ill., 262; Lasher v. Gardner, 124 Ill., 441.

---

FROM DAVIDSON.

---

Appeal from Chancery Court of Davidson County. —Jno. Allison, Chancellor.

Lewis Leftwich, for appellants.

G. B. Kirkpatrick, A. F. Whitman, and Jno. E. Fisher, for appellee.

Mr. Justice Williams delivered the opinion of the Court.

Complainants, husband and wife, executed to one Loventhal, a real estate agent, a contract authorizing the latter to sell a tract of land belonging to the wife.

Acting under that contract, Loventhal opened negotiations with defendant, Keiser, who agreed to purchase The instrument executed to the real estate agent by complainants, so far as pertinent, is quoted, as follows:

"We, Louis Lusky and Lettie Lusky, hereby authorize and empower Dorris S. Loventhal, a real estate dealer in Nashville, Tennessee, to sell for us our farm, containing 106 acres, more or less in the 12th civil district of Davidson county, Tennessee (here giving boundaries) at and for the sum of $11,000, payable $4,500 in cash, and an assumption of a mortgage thereon for $3,500. . . . . And we agree to make a deed to any good purchaser, complying with said terms, procured by said Loventhal, with the usual covenants of warranty and seisin.

"This February 16, 1912.

"LETTIE LUSKY,

"LOUIS LUSKY."

Defendant's acceptance was appended: ·

"February 17, 1912.  I hereby accept the proposition.

"AMELIA KEISER."

The bill of complaint recites that, in order to carry out the contract in good faith, the complainants on March 14, 1912, notwithstanding the refusal of defendant to abide by and perform her contract, executed a deed in accordance with the above-quoted instrument, and tendered same, but that its acceptance

and contract performance were declined by defendant, who gave no reason or excuse therefor.  Suit was brought to recover the difference between the contract price claimed to be thus fixed and the market price as determined by a fully advertised auction sale of the land made in May, 1912, to wit, $3,400.

Defendant, Keiser, interposed a demurrer to the bill of complaint on the grounds:  (1) That no contract binding on her was entered into; and (2) the instrument relied upon as an agreement falls within, and fails because of, the statute of frauds.  The chancellor sustained both of these grounds of demurrer, and from that decree an appeal was prayed to this court.

It is urged in argument in behalf of complainants and appellants that the instrument signed and delivered to the real estate agent by them was a memorandum sufficiently binding them as the "party to be charged" under our statute of frauds, when defendant's acceptance was indorsed.

Our statute, as to this phrase, has been construed by this court to mean the owner of the realty rather than the party attempted to be charged or held liable in an action based on the memorandum.  *Frazer* v. *Ford*, 2 Head, 464; *Lee* v. *Cherry*, 85 Tenn., 707, 4 S. W., 835, 4 Am. St. Rep., 800.

It is by the defendant insisted that the instrument so signed and delivered was not one with her as a contracting party, and operated only as between and on the rights and liability of the owners signing and the real estate agent; that it, was, in no proper sense, a

memorandum or contract of sale contemplated by the statute.

Thus is raised a sharp issue as to the nature and sufficiency of the instrument thus signed by the owners.

It is not necessary that the contract of sale shall be in writing, provided there outstands a writing which contains evidence of the essential terms of the oral contract, and which is signed by such party to be charged. The memorandum is not the contract, but the written evidence of it required by the statute.

A written offer when signed and accepted may constitute a memorandum of the contract, adequate, though it consist of several parts, such as letters relating to the subject, and even though they may be addressed to the owner's agent. *Lee* v. *Cherry,* supra; *Otis* v. *Payne,* 86 Tenn., 666, 8 S. W., 848; 20 Cyc., 254, 255.

It is thereupon argued that here there is such an offer shown addressed to the agent of the owners. But does the instrument tend to evidence, what it must do, a contract of sale between complainants as offerers and defendant as offeree? The defendant was not mentioned in the instrument, when signed, as offeree or buyer, as seems requisite. *Lee* v. *Cherry,* supra; *Gratton* v. *Cummings,* 99 U. S., 100, 25 L. Ed., 366; *Lewis* v. *Wood,* 153 Mass., 321, 26 N. E., 862, 11 L. R. A., 143; 20 Cyc. 261.

In the case of *Haydock* v. *Stow,* 40 N. Y., 363, it appeared that an instrument was executed and delivered

to a firm of real estate agents by the owner, as follows:

"I hereby authorize and empower Peck, Hillman & Parks, agents for me, to sell the following property (describing it) to be sold within —— days from this date, on the following terms (giving them), with interest semiannually, if desired by the purchaser; reserving the right to withdraw the property at any time before the sale, by giving Peck, Hillman & Parks notice thereof.

"Troy, February 18, 1864.

"F. A. STOW."

Indorsed thereon was, "I hereby agree to purchase the property herein mentioned upon the terms expressed," signed by plaintiff, who brought suit to enforce the contract, as one properly evidenced by the above as the memorandum, after Stow had served notice declaring null the instrument thus signed by him. The situation of the parties was the reverse of what appears in the pending case, but the question in each was and is as to the sufficiency of the claimed memorandum. The court of appeals, through Hunt, J., said of the instrument: "It is variously styled an agreement to sell, an offer or proposition of sale, and a power of attorney. It is not an agreement to sell, for the reason that there are not two parties to it. An agreement cannot be made by one party alone. There is no pretense that Peck and Hillman agreed to buy, or that the defendant agreed to sell to them, and they are the only parties named in the paper, ex-

Lusky v. Keiser.

cept the defendant himself. Nor do I see any ground upon which it can be called an offer of sale, except so far as the appointment of an attorney to sell may include such offer. I agree that if the defendant had addressed plaintiff a letter offering to sell him these premises upon the terms specified herein, and plaintiff had made a written acceptance of the same, addressed and delivered to the defendant, that a contract of sale would have been thereby created. . . . But that is not the present state of facts. I consider the instrument to be a plain, direct, unqualified power of attorney to sell the land mentioned in it; nothing more, nothing less. I do not discover in it a single expression that embarrasses such a conclusion. . . . In law, "this reservation" to withdraw the right to sell "was unnecessary," as "the right belonged to the defendant . . . without the formal reservation. . . . This is neither an agreement for sale nor an offer to sell to any particular person, or to the world at large. It is simply a vesting in Peck & Co. of a power before existing in the defendant only. . . . A giving of power and authority, in law creates an agency; but the defendant and Peck & Co. were not content with the declaration of law to that effect, but take the pains to allege that, in fact, Peck & Co. are the agents of the defendant to sell his property. They stand then as agents empowered to sell, . . . and, if they had made such a contract with plaintiff, the defendant would have been bound by it. No such agreement or subscription was made. Plaintiff has,

indeed, expressed in writing his readiness to purchase upon the terms that Peck & Co. were authorized to accept, but Peck & Co. have put nothing in writing. This is not a compliance with the statute, which requires the writing 'to be subscribed by the party by whom the sale was made, or by the agent of such party lawfully authorized.' The defendant or his agent must sign, to make a compliance with the statute, and no aid is derived from the signature of plaintiff.''

In *Fletcher* v. *Underwood*, 240 Ill., 554, 88 N. E., 1030, a similar contract was executed by the owner to a real estate agent, under which the agent had attempted to close orally a trade to Fletcher, who, claiming to be vendee, as appellee on appeal, urged that the instrument referred to was in the nature of an accepted option. The court said: ''Appellee contends that 'an inspection of the written option signed by Carney [owner] shows that it was an offer to sell the one-fourth interest for $2,000, to be accepted by the end of the 27th of January, 1908,' and relies upon *Ullsperger* v. *Meyer*, 217 Ill., 262 [75 N. E., 482, 2 L. R. A. (N. S.), 221, 3 Ann. Cas., 1032.], and other cases of that character, in which specific performance had been decreed in favor of a vendee against a vendor where the latter had signed the contract or memorandum, and the former had not. In each of those cases the identity of both vendor and vendee could be ascertained from the writing. Here no vendee is named or otherwise pointed out by the writing. It is true the

instrument states that Carney will, upon demand, within the time limited, make a good and sufficient transfer of the interest to which the contract pertains; but to whom? Manifestly, to the person to whom Parriott [the agent] should made a sale. The fact that Parriott had made a sale, the statute of frauds being interposed, could be evidenced, as against Carney, only by a writing signed by Parrott, acting as agent for Carney.''

It may be said, by way of parenthesis, that we need not express an opinion in regard to the soundness of those parts of the decisions in the cases of *Haydock* v. *Stow* and *Fletcher* v. *Underwood,* supra, in reference to the power of the agents, under such contract executed to them, to conclude or make contracts of sale binding on their principals, the owners. While a ruling on the point is not necessary, it may be noted that the question is comprehensively treated in an annotation of the case of *Weatherhead* v. *Ettinger,* 78 Ohio St., 104, 84 N. E., 598, in 17 L. R. A. (N. S.), 210, where the rule, by a clear weight of authority cited, is indicated to be that no wider power is to be deduced from such an authorization to sell than one of finding for the owner a purchaser ready, willing, and able to purchase.

We think it clear that the instrument executed by the owners, Lusky and wife, was one whose function and end was to define in contract form the relationship between them and their agent, Loventhal; and it is difficult to see how, without a further step by or in

behalf of the owners towards contractual assent with defendant, Keiser, that instrument, so perfected as a contract proper, may be deemed a memorandum evidencing another and different contract between the owners and defendant, Keiser—a contract of sale. There was no existent oral contract between the latter parties on February 16, 1912, which could have been evidenced by the contract of agency.

The case of *Lasher* v. *Gardner,* 124 Ill., 441, 449, 16 N. E., 912, is pertinent on its facts and in this language: "It is not contended that the letter of attorney to Van Zandt was a contract entered into with Lasher (claimant to *status* of vendee), but it is said that it is a memorandum of the contract signed by the parties to be charged. . . . The writing, on its face, does not purport to relate to a past transaction, and, in fact, as we have seen, there was no contract made, at the time of its execution, of which it could have been a memorandum." In accord is *Jordan* v. *Mahoney,* 109 Va., 133, 135, 63 S. E., 467, 17 Ann. Cas., 267.

In *Donnell* v. *Currie* (Tex. Civ. App.), 131 S. W., 88, it was held that letters from the owner of land to his selling agent, referring to the price and terms upon which it might be sold, were mere instructions for the agent's guidance, and not an offer of sale to a prospective purchaser procured by the agent; the letter not having been intended as contract of sale.

The most specious argument in behalf of the appellants' contention is that the agency contract was an

offer through the agent to the purchasing public, and binding upon acceptance by any one able to comply. This is refuted when consideration is given to the nature of the contract, which is not addressed to the world at large, or to any prospective acceptor whomsoever, as is the case in open offers of rewards, of prizes, or of letters of credit addressed generally.

In *Lee* v. *Cherry,* supra, it may be observed, a correspondence by letters between the owner and his agent was made to serve as an adequate memorandum, but the owner therein authorized the sale of the lot to Lee. In short, the letters "contained all the terms of sale and a sufficient description of the property," including the name of the prospective vendee, to whom the owner specifically obligated himself.

A contract similar to the one in this case, between owner and agent, appeared in *Evans* v. *Stratton,* 142 Ky., 615, 134 S. W., 1154, 34 L. R. A. (N. S.), 393; but the question now under consideration seems not to have been there raised. The court, in that attitude of the cause, appears to have assumed that the agency contract as a memorandum was sufficient, or became a contract on acceptance, without deciding the point as we conceive. See, in this connection, *Davis* v. *Brigham,* 56 Or., 41, 107 Pac., 961, Ann. Cas. 1912B, 1340.

On these authorities, and on principle, we conclude that the contract between the complainants and their real estate agent cannot be made to serve as a memorandum which adequately evidenced the essentials of a contract for the sale of realty between the complain-

ants and the defendant. The complainants, unless and until they came more immediately into contractual relation to defendant, were at liberty to decline to proceed. If this be true, the defendant was not bound to do so. Her signature was not, as we have seen, that of "the party to be charged," and it did not avail to consummate a contract binding on her, where none existed before.

There is no error in the decree of the chancellor. Affirmed.