KNOWLES et al. v. ALBERT et ux.

(District Court, S. D. Florida. October 13, 1925.)

No. 355.

1. **Frauds, statute of ⏤107(2)—Memorandum of sale of land must identify other party, without necessity of parol proofs.**

A memorandum of sale of land, required by the statute of frauds, is not the contract; but it must so designate the other contracting party that he can be identified without parol proofs.

2. **Frauds, statute of ⏤107(2)—Telegrams, not naming purchasers, held insufficient memorandum.**

Telegrams and writings exchanged by one who owned part of land offered for sale, and had power of attorney as to balance, with real estate brokers, which did not name purchasers, *held* insufficient memorandum to comply with statute.

3. **Action ⏤53(3)—Separate bills to compel partial performance of entire contract will not lie.**

Where defendant owned part of land offered for sale, and had power of attorney as to balance, separate bills for specific performance will not lie against him as to portion owned by him and against owners of the balance, where the contract for sale, if any was made, referred to the entire acreage at a given price per acre, since a bill will not lie to compel partial performance of an entire contract.

4. **Vendor and purchaser ⏤28—Telegrams and writings held not to evidence completed contract.**

Telegrams and writings exchanged by holder of power of attorney with brokers, as to terms of sale, *held* to evidence, not a contract of sale, but parties' intention that certain matters be left open for further negotiation, and that formal contract be prepared and submitted for approval.

In Equity. Bill for specific performance by Frances E. Knowles and others against J. A. Albert and wife. On motions to dismiss. Motions granted.

Shutts & Bowen, of Miami, Fla., for complainants.

Baker & Baker, of Jacksonville, Fla., Mayer, Meyer, Austrain & Platt, of Chicago, Ill., and Cooper, Knight, Adair, Cooper & Osborne, of Jacksonville, Fla., for defendants Albert and Bernstein.

CALL, District Judge. An original bill was filed in the state court in Dade county, seeking specific performance of a contract to convey certain lands in said county. The defendants duly removed said cause to this court, and on July 15, 1925, an amended bill was filed by leave of the court. The defendants filed a motion to dismiss the bill, and it is upon this motion that the hearing was had.

The complainants rely upon certain telegrams, and an agreement signed by the complainants, a receipt given by the real estate brokers, and a letter given the bank on the deposit in escrow of $5,000, to make out the contract of sale. The defendants contended that these papers do not constitute such contract. Some 20 grounds are set out in the motion. The allegations of the bill present this state of facts:

The defendants in this suit owned 40 acres of land in Dade county, on a road known as "Red Road," and had theretofore given one Bernstein a power of attorney to sell and convey any real estate they might own in Dade county; that Bernstein owned 10 acres of land adjoining the tract owned by defendants; that on February 22, 1925, Bernstein sent a telegram to a Miami bank, as follows: "Attention Daniels this is your authority to draw contract with Ravlin's customer for fifty acres Red Road for one hundred thousand dollars one-third cash subject to mortgages enumerated in my wire of February 19th five thousand commission payable to Ravlin but take statement in writing that his customer is not the same party who was buying through Broker Franklin cash payment is reduced from thirty-eight thousand dollars to thirty-three thousand three hundred and thirty-three dollars deal must be closed within thirty days send contract here for my signature."

The telegram of February 19th, referred to, is as follows: "Called to Chicago Sunday account my mother's death, owner fifty acres Red Road have purchaser whose willing to sign contract and place five thousand binder in escrow with bank one hundred thousand thirty-eight thousand three hundred thirty-three cash three mortgages on record as follows Twenty-two thousand and four hundred dated January third due one two and three years five thousand dated January third due one and two years ten thousand dated January twenty-sixth due one two and three years all bearing interest mortgages and cash amount to seventy-five thousand seven hundred thirty-three balance twenty-four thousand two hundred sixty-

seven purchase money mortgage due one two and three years eight per cent. interest five thousand payable to Broker Franklin provided deal is consummated by delivery of deed and payment of purchase price otherwise no commission have Lawyer Price draw contract for me and 'I will pay him and your fee after contract is signed and binder is deposited with you mail contract here to my signature contract should contain provision that deal must be closed within thirty days and that contract is subject to my approval am wiring broker to see you."

The first telegram quoted above was in response to a telegram of February 21st from Ravlin, as follows: "Refer fifty acres Red Road your price to me including five per cent brokerage one hundred thousand one third cash balance one two three years your instructions to bank here required additional five thousand wire bank immediately to reduce cash payment to one third of hundred thousand as per your agreement have sold to four other parties therefore wire commission payable to me this is a new deal purchasers will not raise their first payment am holding five thousand and binder for your answer must act quick wire to Larkin."

On February 20th a receipt was given to the complainants for $5,000, by the broker as a "deposit for an option," on 50 acres of land situated in S. E. ¼ of N. E. ¼, section 36, township 54 south, range 40 east, Dade county, Fla., setting out the price as $2,000 per acre, and stating the terms of payment at one third cash, balance in three annual payments at 8 per cent. interest, the purchaser to comply with his part in 30 days or forfeit the $5,000. This receipt then specified that, in the event the owner does not approve of the terms of the receipt, or other terms agreeable to both parties, then the deposit shall be returned. Following the receipt is a paper, signed by the complainants, in which they agree to purchase the above-described property on the terms mentioned in the receipt, and appended to the same is a clause approving same, to be signed by the owners, but not signed.

The bill alleges that the lands of the defendant are covered by the description in the receipt and that they own no other lands on Red road. On February 23d $5,000 was deposited with the bank on a joint letter by Ravlin and one of the complainants, as follows: "Inclosed herein are three checks, aggregating $5,000, which you are hereby authorized to cash and hold the proceeds in escrow in accordance with telegraph instructions addressed to yourselves, signed by Max

Bernstein, under date of February 19th, supplemented by his wire to you under date of February 22d, a copy of which has been given us."

It is upon these documents that the complainants rely to prove the contract of sale, and which they ask to be specifically performed. On March 10th Bernstein telegraphed the bank to return the deposit, refusing to proceed further in the transaction.

The question for the court to decide is: Do these papers, provided all are read together, show a memorandum of a contract of sale of lands, signed by the person to be charged, or his duly authorized agent? I do not think so. I do not understand the telegram of February 22d as changing the terms of the telegram of February 19th in any respect, except as to the first payment and the broker to whom the commission was to be paid. This view of the telegram is borne out by the language of the receipt given by the broker to the complainants. It is contended that the telegrams of Ravlin to Bernstein and the telegram from Bernstein to the bank are not sufficient to prove a contract of sale, because nowhere is the proposed purchaser named.

[1, 2] The memorandum is not the contract, but the written evidence of it required by the statute, as decided in Lusky v. Keiser, 128 Tenn. 705, 164 S. W. 777, L. R. A. 1915C, 402; but, as decided in Grafton v. Cummings, 99 U. S. 100, 25 L. Ed. 366, that memorandum must so designate the other contracting party that he can be identified without parol proofs. In this case it seems to me that it would be necessary to resort to parol proofs to show who were the purchasers referred to in Ravlin's telegram. Certainly there is no evidence in the telegrams that Bernstein knew who such parties were. No names are therein mentioned. This, it seems to me, is sufficient to cause the motion to dismiss to be granted, without considering the matter further.

The point is made that the description of the land is not sufficient. Under the decision of the Supreme Court of the state of Florida, in case of Lente v. Clarke, 22 Fla. 515, 1 So. 149, it would seem that the description might be sufficient; but, in the view I take of the whole case, the question is immaterial to the decision on the motion.

[3] Again, it is contended that the complainants are attempting in this proceeding to divide an entire contract, and have it partially performed. This, of course, cannot be done, if the contract is entire in its terms. It seems to me that this contract is entire. The telegrams refer to 50 acres at a certain price for the whole body, not so much per acre. These defendants, it is alleged, own 40 acres. Bernstein owns the other 10 acres. I am of opinion that the allegations of this bill will not authorize, when considered with the documents relied upon to support them, a partial performance.

[4] There are other points insisted upon in the briefs, but I think I have said enough to indicate the grounds of my decision; but I will say that, taking all the documents relied upon by the complainants to establish the existence of the contract of sale, I find myself unable to say that the parties did intend to have the documents evidence the contract of sale. I am of opinion that these documents evidence the intention of the parties that the formal contract to be prepared and submitted to Bernstein was to constitute the agreement of the parties, and until that was done there was no contract; in other words, that there were matters left open for further negotiation between the parties.

What I have said above applies with equal force to case No. 354, by these complainants against Bernstein. The motions to dismiss in this case and also in case No. 354 will be granted.