Albert J. COHEN, Temporary Administrator of the Estate of Byron M. McKnight, Deceased, Appellant,

v.

Gene McCUTCHIN et al., Appellees.

No. 5724.

Court of Civil Appeals of Texas, Waco.

Aug. 4, 1977.

Rehearing Denied Aug. 25, 1977.

R. W. Calloway, Turner, Rodgers, Sailers, Jordan & Calloway, Dallas, for appellant.

John L. Roach, Inc., Dallas, for appellees.

HALL, Justice.

Appellant, Albert J. Cohen, Temporary Administrator of the Estate of Byron M. McKnight, Deceased, brought this suit against Gene McCutchin, Jerry McCutchin,

and Alma McCutchin, appellees, for sums due from appellees under a contract allegedly between McKnight and appellees, asserting that in the contract McKnight agreed to assign certain mineral interests to each appellee, and appellees (after payment of an initial sum) agreed to pay McKnight shares of the cost of drilling and completing a test oil and gas well. Appellees answered with a general denial, and also pleaded the statute of frauds (Section 26.01, Vernon's Tex.Bus. & Com.Code) in defense of appellant's cause of action. All parties filed motions for summary judgment. Appellant's motion was overruled, appellees' motion was granted, and judgment was rendered that appellant take nothing. He appeals. We affirm.

Appellant alleged in his petition that on June 3, 1974, McKnight acquired a 25% working interest in an exploratory oil and gas well "described generally as the Barstow Townsite Unit No. 2, Ward County, Texas"; that thereafter McKnight entered into written agreements with appellees whereby they acquired the following individual interests in the well: Gene McCutchin 8.7143%, Jerry McCutchin 5.7143%, and Alma McCutchin 5.7143%; that "a copy of such agreements is attached hereto"; that by such agreements appellees agreed to pay their percentage of the cost of the drilling and completion of the test well and of the expense of operations attributable to their respective working interests; that Gene McCutchin has paid the sum of $90,082.61, Jerry McCutchin has paid $59,070.66, and Alma McCutchin has paid $59,070.66; and that after giving appellees credit for their payments there remains due to appellant $115,072.62 by Gene McCutchin, $75,457.49 by Jerry McCutchin, and $75,457.49 by Alma McCutchin. The sums claimed due by appellant were supported by invoices and other business records attached to his petition and verified by him.

The letter agreements referred to in appellant's petition (and attached to it) upon which his claim is based are two in number and are signed by appellees. The first reads:

June 12, 1974

Re: Barstow Townsite Unit No. 2, Ward County, Texas, as said Unit is described in instrument of record in Vol. 355, pages 415 et seq. of Deed Records of said County

Gentlemen:

This Letter Agreement, when accepted by you, will confirm our oral agreement whereby we agree to assign to you and you agree to acquire and pay for an undivided 17.143% interest in the above Unit, subject to the following terms and conditions:

1. Reference is made to the following exhibit attached hereto and made a part hereof:

 A. Map in which said Unit is bordered in yellow.

2. We agree to commence or cause to be commenced on or before June 15, 1974 operations for the drilling of a test well at the location shown on Exhibit A and drill same to a test of the Fusselman formation at approximately 18,000 feet. If same is productive, we will complete it as a producer and install all necessary equipment and facilities for the production of oil and/or gas. The cost of a completed producing well is estimated at $1,725,000.

3. You agree to pay the following costs:

 A. The sum of $17,143 commissions heretofore paid by us.

 B. Your percent of the cost of the drilling and completion of the test well, and of the expense of operations attributable to your working interest.

 Receipt is acknowledged of the sum of $17,143 and further payment shall be made from time to time upon billing during progress of drilling and completion of the well.

4. Prior to payout of the well costs, your expense interest will be 17.143% and your revenue interest will be 12.343%. After payout of the well costs and until payout of the item set forth in paragraph 3-A, your expense interest will be 8.5715% and your revenue in-

terest will be 6.8572%. After payout of both well costs and the item in paragraph 3–A, we will come in for one-fourth (¼) of your then existing interest and thereafter, your expense interest will be 6.4286% and your revenue interest will be 5.1429%.

The interest covered by this letter shall be owned in the manner set forth opposite your signatures.

| Gene McCutchin | 05.7143% |
| Jerry McCutchin | 05.7143% |
| Alma McCutchin | 05.7143% |

The second letter agreement reads as follows:

June 12, 1974

Re: Barstow Townsite Unit No. 2, Ward County, Texas, as said Unit is described in instrument of record in Vol. 355, pages 415 et seq. of Deed Records of said County

Mr. Gene McCutchin
4230 LBJ Freeway
Dallas, Texas 75234
Dear Mr. McCutchin:

This Letter Agreement, when accepted by you, will confirm our oral agreement whereby we agree to assign to you and you agree to acquire and pay for an undivided 3.00% interest in the above Unit, subject to the following terms and conditions:

1. Reference is made to the following exhibit attached hereto and made a part hereof:
 A. Map in which said Unit is bordered in yellow.
2. We agree to commence or cause to be commenced on or before June 15, 1974 operations for the drilling of a test well at the location shown on Exhibit A and drill same to a test of the Fusselman formation at approximately 18,000 feet. If same is productive, we will complete it as a producer and install all necessary equipment and facilities for the production of oil and/or gas. The cost of a completed producing well is estimated at $1,725,000.

3. You agree to pay the following costs:
 A. The sum of $3,000 commissions heretofore paid by us.
 B. Your percent of the cost of the drilling and completion of the test well, and of the expense of operations attributable to your working interest.

Receipt is acknowledged of the sum of $3,000.00 and further payment shall be made from time to time upon billing during progress of drilling and completion of the well.

4. Prior to payout of the well costs, your expense interest will be 3.00% and your revenue interest will be 2.16%. After payout of the well costs, your expense interest will be 1.50% and your revenue interest will be 1.20%.

The interest covered by this letter shall be owned in the manner set forth opposite your signature.

| Gene McCutchin | 3% |

Both letters were mailed to McKnight with a letter of transmittal reading as follows:

GENE McCUTCHIN
Oil Production, Investments
And Real Estate
4230 LBJ Freeway, Suite 200
Dallas, Texas 75234

September 12, 1974

Mr. Byron McKnight
P.O. Box 297
Hobbs, New Mexico 88240
Dear Byron:

Enclosed are checks from Alma McCutchin, Jerry McCutchin, and Gene McCutchin. This covers their portions of costs on the Barstow Townsite Unit No. 2, Ward County, Texas, as reflected by the executed Agreements also enclosed.

Very truly yours,
GENE McCUTCHIN
By
/S/ Hubert H. Thompson, Jr.
Hubert H. Thompson, Jr.

HHTjr/h
enclosures

McKnight sent invoices to appellees in September, 1974, and in November, 1974, for "your share" of accrued drilling expenses on the well. Appellees paid these bills with their individual checks. McKnight deposited the checks to his "oil and gas account" in his bank, and retained stubs attached to the checks. The invoices bore McKnight's letterhead and were addressed to the appellees individually. The check stubs showed the name of the remitting appellee. The deposit slips named McKnight and listed the names of appellees beside the amounts of their payments.

In their motion for summary judgment, appellees pleaded, "The instruments dated June 12, 1974, upon which Plaintiff's suit is founded, do not name Byron M. McKnight . . . do not constitute agreements between said Byron M. McKnight and these defendants, and do not comply with the provisions of [the statute of frauds]." Appellees argue specifically that the letter agreements do not identify McKnight as a party to them and do not contain the promise of appellees "to pay McKnight any amount for anything"; and that, accordingly, appellant's cause of action on those instruments is unenforceable by reason of the statute. We agree.

 In its pertinent parts, the statute of frauds provides that a contract for the sale of real estate is not enforceable unless the agreement, or a memorandum of it, is in writing and signed by the person to be charged with it. The mineral interest in question is "real estate" within the terms of this statute. *Taber v. Pettus Oil & Refining Co.*, 139 Tex. 395, 162 S.W.2d 959, 962 (1942).

 Whether a contract sued upon falls within the prohibition of the statute is a question of law. *Bratcher v. Dozier*, 162 Tex. 319, 346 S.W.2d 795, 796 (1961). It is settled that to comply with the statute the written memorandum evidencing the contract must furnish within itself, or by reference to some other existing writing, and without resort to parol evidence, all the essential elements of the contract sued upon. *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150, 152 (1945); *Osborne v. Moore*, 112 Tex. 361, 247 S.W. 498, 499 (Tex.Com. App.1923, opinion adopted); *Boddy v. Gray*, 497 S.W.2d 600, 603 (Tex.Civ.App.—Amarillo 1973, writ ref.). These elements include an identification of the parties to the contract. *Grafton v. Cummings*, 99 U.S. 100, 25 L.Ed. 366 (1878); *Johnson v. Granger*, 51 Tex. 42, 45 (1879); *Walker Avenue Realty Co. v. Alaskan Fur Co.*, 131 S.W.2d 196, 198 (Tex.Civ.App.—Galveston 1939, writ ref.); *Watson v. Brazelton*, 176 S.W.2d 216, 218 (Tex.Civ.App.—Waco 1943, no writ); 37 C.J.S. Frauds, Statute of § 193, p. 677.

In *Grafton v. Cummings*, supra, Grafton signed an instrument in which he agreed to purchase certain real estate known as "Glen House" sold at auction in the State of New Hampshire. He was the only person named in the instrument. It referred to another instrument which named Cummings, but did not identify him as the owner or seller of the premises. Grafton later determined not to buy, was sued by Cummings on the contract, and interposed the New Hampshire statute of frauds which reads identically to ours. In the course of its opinion holding the contract unenforceable under the statute, the Court said:

"The distinct objection to the instrument, as so presented, is, that the other party to the contract of sale is not named in it, and can only be supplied by parol testimony.

"The statute not only requires that the agreement on which the action is brought, or some memorandum thereof, shall be signed by the party to be charged, but that the agreement or memorandum shall be in writing. In an agreement of sale there can be no contract without both a vendor and a vendee. There can be no purchase without a seller. There must be a sufficient description of the thing sold and of the price to be paid for it. It is, therefore, an essential element of a contract in writing, that it shall contain within itself a description of the thing sold, by which it can be known or identified, of the price to be paid for it, of the party who sells it, and

the party who buys it. There is a defect in this memorandum in giving no indication of the party who sells. If Grafton was bound to purchase, it was because somebody was bound to sell. If he was bound to pay, somebody was bound to receive the money and to deliver the consideration for the price so paid.

"There can be no bargain without two parties. There can be no valid agreement in writing without these parties are named in such manner that someone whom he can reach is known to the other to be bound also. No one is bound in this paper to sell the Glen House, or to convey it. No one is mentioned as the owner, or the other party to this contract. Let it be understood that we are not discussing the question of mutuality in the obligation, for it may be true that if a vendor was named in this paper, the offer to perform on his part would bind the party who did sign. But Grafton did not agree to buy this property of anybody who might be found able and willing to furnish him a title. He was making a contract which required a vendor and a vendee at the time it was made, and he is liable only to that vendor. The name of that vendor, or some designation of him which could be recognized without parol proof extraneous to the instrument, was an essential part of that instrument to its validity."

In *Walker Avenue Realty Co. v. Alaskan Fur Co.*, supra, Alaskan Fur delivered a written offer to lease a building, signed officially by its president, to the office of the owners of the building. The offer was directed only to "Gentlemen" and did not name any potential lessor or anyone other than Alaskan Fur. The offer was later withdrawn, and Alaskan Fur was sued by the owners for damages for an alleged breach of contract to lease the building. It pleaded the statute of frauds. Plaintiffs relied upon the written offer. Among other holdings, the court said:

"It is equally clear that said proposal is within the statute of frauds, for the reason that it fails to identify the lessors to the proposed lease."

In *Watson v. Brazelton*, supra, Watson sued Brazelton for commissions alleged to be due for services rendered as a licensed real estate broker in the sale and exchange of certain real estate between Brazelton and Turner. Defendants pleaded section 22 of Article 6573a, Vernon's Tex.Civ.St., which then provided that "No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith." In support of his suit Watson offered the written contract between Brazelton and Turner which contained among other terms a provision reading, "It is further agreed that [Brazelton] [is] to pay the commission of five per cent (5%) on Nine Thousand Dollars ($9000.00) and [Turner] [is] to pay the 5% commission on Five Thousand Dollars ($5000.00)." The agreement did not name Watson or any other person to whom the commissions should be paid. This Court held that because plaintiff was not named in the memorandum he was prohibited by the statute from basing his suit upon it for the commission agreed to be paid in it by Brazelton.

█ The letter agreements sued upon do not name or otherwise identify the vendor of the mineral interests or the recipient of the sums to be paid by appellees. McKnight is not named in them in any capacity. They simply do not show a contract between McKnight and appellees.

█ Copies of the letter of transmittal, McKnight's invoices to appellees, the stubs of appellees' checks paying the invoices, and the deposit slips showing McKnight deposited the checks to his bank account, were all part of the summary judgment record. Appellant says these exhibits may be considered with the letter agreements to satisfy the statute of frauds and that when all are considered together they necessarily identify McKnight as the unnamed party in the letter agreements. The exhibits can hardly be classed as "existing, referenced

memoranda" required to satisfy the statute of frauds. In any event, when all the writings are considered together, they do not identify McKnight as a party to the letter agreements.

In *Osborne v. Moore*, 112 Tex. 361, 247 S.W. 498 (1923), Osborne sued Moore for specific performance of a verbal contract by Moore to sell Osborne a house and lot. The contract was evidenced by a check for $100 issued by Osborne payable to Moore which contained the notation, "To bind deal on 1 block and 6-room house on North Oak St., Wm. Osborne. Accepted. Hunter & Graves, by M. D. Hunter, agent." Moore invoked the statute of frauds. In connection with the check Osborne offered evidence that Hunter was Moore's agent for the sale of the property, and that Hunter sold the property to Osborne and accepted the check from Osborne as an earnest money deposit to bind the trade. The description of the property was held to be defective, and the question arose as to whether the check identified Moore as owner of the property. The Court said, "The owner of the property referred to in said memorandum is not stated. We are left to infer that it belonged to defendant, Moore, because he is payee in the check. Such inference is not a necessary one, and will not be indulged to support a writing otherwise insufficient."

Appellant concedes there are no equitable circumstances in the case which would lift the contract from the operation of the statute. None are of record.

▪ Appellant's contention that the record raises only lack of mutuality of remedies in the agreements sued upon is overruled. The record establishes as a matter of law that the written agreements do not meet the requirements of the statute of frauds because necessary parties to the agreements are not identified.

Appellant's remaining points and contentions are without merit.

The judgment is affirmed.